ACTON CONSTRUCTION CO., et al., Appellants,

v.

The COMMISSIONER OF REVENUE, Respondent.

No. Cl–85–1516.

Supreme Court of Minnesota.

Aug. 15, 1986.

Jon Sarff, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas K. Overton, Sp. Asst., Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

Mark D. Thompson, Metropolitan Waste Control Commission, St. Paul, amicus curiae.

WAHL, Justice.

This is an appeal from a decision of the Tax Court affirming an order of the Commissioner of Revenue. The Commissioner denied appellant general contractors' claims to a sales tax refund in accordance with Minn.Stat. § 297A.35 (1984) unless the contractors would agree to remit the refunded amount of tax to their contract customers.[1] We affirm the decision of the Tax Court.

The facts have been stipulated. Appellants, Shafer Contracting, Inc. and Progressive Contractors, Inc., are Minnesota general contractors. They contracted with governmental entities to build public works projects that included installation of water mains and storm or sanitary sewers.

---

**1.** This case originated in Ramsey County District Court as an action for declaratory judgment. Forty-five general contractors, including appellants, sought a declaration that they were entitled to refund of sales tax without the conditions imposed by a policy of the Department of Revenue. The District Court transferred the matter, with all constitutional issues, to the Minnesota Tax Court, pursuant to Minn.Stat. § 271.-01, subd. 6 (1984). Because the claims of all plaintiffs were based on similar facts, only two claims, those of appellants, were fully presented. Final decision in these two cases, it was agreed, would apply to and bind the other plaintiffs and it was further agreed the matter would be handled as an appeal from a Commissioner's order denying appellants' claims for refund unless they assured the Department of Revenue they would pay over the refund to their contract customers.

These were fixed-price contracts [2] and included provisions requiring the contractor to pay all sales and use taxes incurred in completing the project.

At the time these contracts were entered into, it was the position of the Department of Revenue that when a contractor installed sewers or water mains as part of a construction project, the transaction was characterized for tax purposes as an improvement to the contract customer's real property. The result of this characterization was that when the contractor purchased pipe from a supplier for use in the construction, that purchase was considered a "retail sale" of building materials for use in real property improvement and was taxable.[3] Minn.Stat. § 297A.01, subd. 4 (1984). Both appellant contractors and their contract customers understood this to be the tax consequence of the projects for which they were contracting, and Progressive and Shafer state they estimated and factored this expected tax liability into the price they bid for these contracts. Their bids were accepted and when Progressive and Shafer purchased pipe for completion of the water main and sewer construction projects, they paid sales tax to their suppliers who remitted the tax to the state.

In 1983, this court changed the prevailing understanding of the law by holding that a contractor's installation of sewage treatment equipment as part of a contract to build a sewage treatment plant was not to be characterized for tax purposes as an improvement to the contract customer's real property, but was instead to be characterized as a sale of tangible personal property to the customer. *Zimpro, Inc. v. Commissioner of Revenue*, 339 N.W.2d

736 (Minn.1983). Thus, in *Zimpro*, when the contractor purchased from its supplier the pipe necessary for fulfilling its construction contract, this purchase was not a taxable event but was, rather, a tax exempt purchase for resale. *Id.* at 738, 741. The installation of the equipment by the contractor in *Zimpro* would have been taxable as a retail sale of tangible personal property to the customer except that the customer was a governmental entity exempt from sales tax on the retail sales of tangible personal property under Minn.Stat. § 297A.25, subd. 1(j) (1984). The taxable event in the cases before us was the contractor's installation of the water mains and sewers [4] in the customer's project, but Progressive's and Shafer's contract customers are also exempt governmental entities. Thus, all parties agree the sales tax was erroneously collected and paid to the state. Progressive and Shafer applied to the Commissioner of Revenue, through their suppliers, for refund of the erroneously paid sales tax. The contractors have stipulated they intend to retain any refund received and will not remit the refunded amount to their contract customers. The Commissioner denied the refund claims unless the contractors would provide adequate assurance that the refunded amount of tax would be remitted to the customers who paid it. The Tax Court affirmed the Commissioner's order, holding that under *Zimpro*, excess sales tax had been paid and refunds were due, but further holding that under the sales tax refund statute, Minn. Stat. § 297A.35 (1984), the appellants' contract customers were entitled to the refunded amount of tax. The court determined the Commissioner could, therefore, condition refunds to Progressive and Shaf-

---

**2.** A "fixed price contract" is a "[t]ype of contract in which buyer agrees to pay the seller a definite, predetermined price." Black's Law Dictionary (5th ed.1979).

**3.** Even when the pipe was to be installed in a project being constructed for a tax exempt customer, such as a governmental entity, sales tax was imposed because the taxable event (the retail sale) was considered to be between the supplier and the contractor, not between the contractor and the tax exempt customer.

**4.** The Tax Court subsequently applied *Zimpro's* reasoning in *Tini Mechanical Contractors, Inc. v. Commissioner of Revenue*, Minn.Tax Ct.Docket 3708 (Jan. 20, 1984). The Tax Court characterized a contractor's installation of pipes and water mains into public streets for tax purposes as a retail sale of tangible personal property and applied *Zimpro's* analysis of the tax consequences.

er on receipt of satisfactory assurances that the refunds would be remitted to the proper parties. Under the court's decision, the customers themselves could also apply for the refunds.

Appellants challenge the Tax Court's interpretation of the sales tax refund statute and argue, in the alternative, that if this interpretation was intended by the legislature, the statute unconstitutionally impairs the obligation of contract and violates constitutional guarantees of equal protection of law and uniform taxation. Finally, appellants argue the statute's two-year statute of limitations should be replaced by a six-year limitations period.

## I.

■■■ We will first address the issue of whether the Commissioner of Revenue may require the contractors to return refunded sales tax to their customers as a condition of the refund under Minn.Stat. § 297A.35 (1984). Appellants claim the sales tax refund statute should be interpreted to mean that they, and not their contract customers, are entitled to retain any refund of sales tax erroneously paid in the course of these contracts. In Minnesota, the right to claim a refund of taxes voluntarily paid in error is governed by statute. There is no common law action or equitable basis for such recovery.[5] *Horn v. City of Minneapolis*, 182 Minn. 172, 234 N.W. 289 (1930) (no common law cause of action for taxes voluntarily paid in error); *Minneapolis Brewing Co. v. Village of Bagley*, 142 Minn., 16, 19, 170 N.W. 704, 705 (1919) (equitable claims for recovery of taxes paid in error have been embodied in tax refund statute).

The sales tax refund statute provides: A person who has * * * paid to the commissioner an amount of tax for any period in excess of the amount legally due

* * * may file with the commissioner a claim for refund of such excess *subject to the conditions specified in subdivision 5.*

Minn.Stat. § 297A.35, subd. 1 (1984) (emphasis added). Subdivision 5 requires:

If a *vendor* has collected from a *purchaser* and remitted to the state a tax on a transaction which is not subject to the tax imposed by this chapter, *the tax shall be refundable to the vendor only if and to the extent that it will be* credited to the amounts due to the vendor by the purchaser or *returned to the purchaser by the vendor.*

Minn.Stat. § 297A.35, subd. 5 (1984) (emphasis added). Subdivision 1 establishes the right to refund of excess sales tax paid and subjects that right to the conditions of subdivision 5. Subdivision 5 provides for refund to the "vendor" only if the refunded amount will be returned to the "purchaser." The purpose of the statute is evident from its provisions. Sales tax refunds are to be returned to the purchaser who actually bore the burden of the tax and are not to become a windfall to the vendor. We must ask, then, who, in this case, is the vendor and who is the purchaser for purposes of the statute.

The Commissioner argues the contractors are vendors who erroneously collected sales tax from their customers, who purchased sewers or water mains. The contractors contend they are the purchaser for purposes of the statute, because the sales tax was actually collected from them when they purchased pipe from their suppliers.

We reject the contractors' interpretation as inconsistent with the reasoning of our decision in *Zimpro, supra.* According to the rationale of that case, the contractor is characterized for tax purposes as a vendor whose transfer of the finished pipe product

---

**5.** Appellants have argued in their brief what appears to be a contract theory of recovery. They argue they negotiated with their customers for a contract price that included an amount for sales tax believed to be owed and that these contracts allocated both the risk or benefit of changes in tax liability to the contractor. The terms of these contracts have no bearing on our determination of who has a statutory right to the refund in this case. If the contracts between the parties set out who is entitled to keep the refunded amount, a matter of contract interpretation that we do not decide here, that issue is properly raised in a separate contract enforcement action between the parties.

to the customer is taxed as a retail sale. As purchaser, the contract customer has paid the sales tax, while the contractor, as vendor, merely remits the tax to the state. Under the facts of this case, appellants' contract customers are the purchasers to whom the refund of excess sales tax paid must be remitted. We hold that the Commissioner of Revenue may require the contractors to return refunded sales tax to their customers as a condition of the refund under Minn.Stat. § 297A.35 (1984).

## II.

■ Appellants next contend that if the sales tax refund statute is interpreted to require them to remit the refunded amount of tax to their contract customers, their contract rights will be unconstitutionally impaired in violation of article I, section 10 of the United States Constitution and article I, section II of the Minnesota Constitution.[6] Such an interpretation, appellants argue, has the effect of reducing the amount of profit they are entitled to accrue from the performance of a pre-existing contract. The underlying assumption of appellants' argument is that the terms of the fixed price construction contracts in this case allocate to the contractor both the risk and the benefit of any change in tax liability. The *Zimpro* decision created a tax refund windfall and, appellants insist, that windfall should be theirs to enjoy.

The prohibition of the Contract Clause is not absolute, but accommodates the inherent police power of the state to pass laws and regulations to safeguard the public interest. *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 410, 103 S.Ct. 697, 703, 74 L.Ed.2d 569 (1983); *Christensen v. Minneapolis Municipal Employees' Retirement Board*, 331

N.W.2d 740, 749–750 (Minn.1983). To determine if a legislative measure violates either state or federal contract clauses, we have employed a three-part test developed under the federal constitution in the case of *Energy Reserves, supra.* See *Christensen, supra.*, at 750. The first step of this test is to ask if the challenged law operates as "a substantial impairment of a contractual relationship." *Energy Reserves*, 459 U.S. at 411, 103 S.Ct. at 704.[7]

We need not go further in our analysis than this first step. A law that restricts a contracting party to gains it reasonably expected from a contract does not substantially impair the contractual obligation. *See, El Paso v. Simmons*, 379 U.S. 497, 515, 85 S.Ct. 577, 587, 13 L.Ed.2d 446 (1965). When these contractors and their customers negotiated a contract price, their reasonable expectations were based on a shared, albeit erroneous, understanding of the tax liability to be incurred by the construction project being undertaken. Appellants acknowledge that at the time of contracting, they reasonably expected taxes to be among the costs of the project and included these expected tax costs in their estimates of overall project costs. We can assume the contractors bid a contract price that would guarantee them an acceptable level of profit after project costs were deducted. If section 297A.35 is applied as we have interpreted it today and appellants do not retain the refunded amount of tax, the contractors will still receive the expected amount of profit from these contracts. They are deprived only of a windfall profit, an amount both parties mistakenly included in their calculations of a fair contract price. Because we find that application of section 297A.35 merely restricts appellants to gains they reasonably expected from their

6. Art. I, § 10 of the United States Constitution provides "No State shall * * * pass any * * * law impairing the obligation of Contracts * *." Art I, § 11 of the Minnesota Constitution provides "No * * * law impairing the obligation of contracts shall be passed * * *."

7. If a substantial impairment is found, the state must then articulate "a significant and legitimate public purpose" justifying the law, such as

"the remedying of a broad and general social or economic problem." *Energy Reserves* at 411–12, 103 S.Ct. at 704. If such purpose is identified, it must finally be asked if "the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying [the law or regulation]." *Id.* at 412, 103 S.Ct. at 705. (citation omitted).

contracts, we cannot conclude the obligation of contract has been substantially impaired in this case. We hold that application of Minn.Stat. § 297A.35 to the refund claims of Progressive and Shafer does not violate contract rights guaranteed by federal and state constitutions.

### III.

■■■■ The appellants' next claim is that the Commissioner applied section 297A.35, subdivision 5 differently to their tax refund claims than to the claims of other, similarly-situated taxpayers. Appellants contend this different treatment denied them equal protection of law and uniform taxation as guaranteed by the federal and state constitutions.[8] These constitutions protect persons against arbitrary discrimination resulting from the express terms of a statute as well as from a statute's improper application. *Matter of McCannel*, 301 N.W.2d 910, 916 (Minn.1980). We note at the outset that a taxpayer carries a heavy burden in challenging a tax classification on equal protection or uniformity grounds. A tax classification is presumed to be valid and will not be disturbed unless it is "clearly arbitrary and has no reasonable basis." *Id.* at 917 (citation omitted). We will permit a classification to stand if there is a reasonable ground for making a distinction and we have stated the difference between classes need not be great to be upheld. *Id.*

■■■■ Appellants cite three instances of different treatment to support their claim that the Commissioner has applied subdivision 5's distinction between "vendor" and "purchaser" in an arbitrary manner. First, they claim Shafer received a sales tax refund in an earlier claim without the condition that the contractor remit the refunded amount to its contract customer. In the circumstances giving rise to the earlier claim, Shafer had purchased fuel for its own use and erroneously paid sales tax on the purchase. The fuel supplier applied on

Shafer's behalf for a refund, which the Commissioner allowed, and the supplier returned the refund to Shafer. Because Shafer used the fuel itself and did not resell the fuel to any customer, it is clear that under the facts of this earlier claim, Shafer was the purchaser entitled to the refund under the statute. In this case, by contrast, Progressive and Shafer resold to their contract customers the supplies on whose purchase the excess tax was paid. Under these facts, the customer and not the contractor is the final purchaser entitled to the protection of the statute. We do not agree that the Commissioner's handling of Shafer's earlier claim is inconsistent with its handling of appellants' claims in this case. The circumstances of Shafer's earlier claim are not similar to those of the claims at issue here, and the Department's different treatment of dissimilar claims is not clearly arbitrary.

■■■■ Next, appellants point to the fact that contractors who receive refunds of sales tax paid on purchases made in the course of performing fixed price contracts for the improvement of a customer's realty are permitted by the Commissioner to retain the refund whereas contractors, like themselves, who receive refunds of sales tax paid on purchases made in the course of performing fixed price contracts for the sale of tangible personal property to a customer are not. The Commissioner explains that this difference in treatment derives from the provisions of Minn.Stat. § 297A.01, subd. 3(a) (1984), which defines a transfer of tangible personal property, but not an improvement to real property, as a sale. If a contractor's transfer to a customer of materials on which the tax was paid is a sale for purposes of the sales tax laws, the contractor is therefore a vendor and is not, in accordance with subdivision 5, entitled to keep the refunded amount of tax when it is claimed. If the transfer is not a sale, the contractor remains the purchaser

---

8. The Fourteenth Amendment of the United States Constitution provides that the state shall not "deny to any person within its jurisdiction the equal protection of the law." The Uniform-ity Clause of the Minnesota Constitution provides that "Taxes shall be uniform upon the same class of subject * * * *" Art. 10, § 1.

who is entitled to the protection of the refund statute. We do not consider this treatment under the tax laws of contractors involved in different types of transactions to be arbitrary.

Appellants' final claim is that the Commissioner's policy after *Zimpro* as to how subdivision 5 would be interpreted to apply to the refund claims of contractors in their position changed to their disadvantage. In their brief, they allege the shift in policy was "motivated by economic and political considerations." There are no facts in the record that support this allegation that the Commissioner's policy was motivated by any improper purpose.

Finding no evidence that the Commissioner has applied subdivision 5 in an arbitrary manner, we hold that no violation of the federal and state constitutional guarantees of equal protection of law or uniform taxation has been shown.

## IV.

 Appellants' final claim is that the Tax Court erred in holding that sales tax refund claims are governed by the statute of limitations provided for in the sales tax refund statute. Section 297A.35 provides, in relevant part: "[N]o such claim [for refund of excess sales tax] shall be entertained unless filed within two years after such tax was paid, or within three years from the filing of the return, whichever period is longer." Minn.Stat. § 297A.35, subd. 1 (1984). The Tax Court rejected an argument for a six year limitations period because appellants based this argument on an unpublished decision of our court. Minn.R.Civ.App.P. 136.01, subd. 1(b) provides that "[a] statement of the decision without a written opinion shall not be officially published and shall not be cited as precedent." The Tax Court's refusal to rely on a decision without precedential value as legal authority to set aside an explicit statutory provision was proper.

Appellants nonetheless ask that we adopt the six-year rule in this case. A six year limitations period, appellants contend, would be in harmony with our decision in *Leisure Dynamics, Inc. v. Falstaff Brewing Corp.*, 298 N.W.2d 33 (Minn.1980), where we held that a seller's action to collect sales tax due from a purchaser is subject to the general six year statute of limitations set out in Minn.Stat. § 541.05, subd. 1(2) (1984) for actions upon a liability created by statute. *Id.* at 37.

The action for refund of sales tax was created by statute and did not exist at common law in this state. We have held that when the legislature creates a right not existing at common law, it has "the power to impose any restrictions it sees fit," and the conditions imposed "qualify the right and are an integral part thereof; they are conditions precedent which must be fully complied with, or the right does not exist." *State v. Bies*, 258 Minn. 139, 146, 103 N.W.2d 228, 234–35 (1960). The shorter limitations period challenged by appellants was established when the legislature created the cause of action for sales tax refund. In *Bies*, we specifically held that a limitations period contained in a statute that both grants and limits a remedy is distinct from an ordinary or general statute of limitations. *Id.* at 147, 103 N.W.2d at 235. "It is clear no general statute of limitations can be called into operation * * since the time limitation in the [statute creating the cause of action [is] an integral part of the [statute] itself and therefore of the essence of the right." *Id.* at 149, 103 N.W.2d at 236. Because the right to a sales tax refund is both created and limited by section 297A.35, we hold that a claim for refund must be brought within the limitations period prescribed by the statute.

Affirmed.