UNITED STATES of America, Appellee,

v.

John W. UNGER, Jr., Appellant.

No. 90–2902.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1991.

Decided Nov. 7, 1991.

---

Robert C. Compton, El Dorado, Ark., argued, for appellant.

Larry McCord, Fort Smith, Ark., argued, for appellee.

Before ARNOLD and BEAM, Circuit Judges, and HANSON,* Senior District Judge.

BEAM, Circuit Judge.

Following a mistrial, John W. Unger, Jr., an attorney since 1978, entered a plea of guilty to appropriating for his own use $50,433.12 belonging to the estate of a debtor, in violation of 18 U.S.C. § 153 (1988).[1] At the sentencing hearing, Unger moved to withdraw his plea of guilty and to have the indictment against him dismissed. The court denied his motions and sentenced him to two years' imprisonment. We affirm.

## I. BACKGROUND

On May 6, 1986, Joseph Lyle Dews filed for chapter 11 bankruptcy protection. As part of Dews's chapter 11 reorganization plan (Plan), the bankruptcy court established a nonliquidating trust, with Unger, representing the creditors' committee, and Dews as co-trustees. The Plan also made Unger and Dews joint custodians of funds owed to Dews by the Crystal Oil and Lion Oil companies. These funds were to be deposited in an interest bearing account at the First National Bank of El Dorado, Arkansas, and used to pay various enumerated creditors, expenses, and attorneys' fees.

In contravention of the Plan, Unger, instead, deposited the funds into his personal checking account and used approximately $50,000 for his own benefit. After Unger repeatedly failed to produce an accounting of the Crystal Oil and Lion Oil money, the bankruptcy court referred him to the United States attorney for prosecution. Unger pled not guilty to a charge of embezzling, but, after his mistrial and the threat of an additional charge of perjury, changed his plea to guilty.

On November 2, the bankruptcy court denied a motion by Unger to award him fees, reasoning that once it confirmed a plan, property of the estate no longer existed and compensation was a matter for state law. Unger claims that the bankruptcy court's ruling that property of the estate no longer exists upon confirmation of a plan gives him an absolute defense to the indictment. Because the defense was unavailable at the time he entered his plea, Unger claims he has a fair and just reason to withdraw the plea. Moreover, Unger claims that without "property of the estate," the court lacked jurisdiction to prosecute him under section 153.

## II. DISCUSSION

### A. Jurisdiction

■ Essentially, Unger bases both of his claims on the belief that once a plan is confirmed, the estate of the debtor ceases to exist. See 11 U.S.C. § 1141(b) (1988). Although normally true, this is not always the case. See, e.g., Resendez v. Lindquist, 691 F.2d 397, 398 (8th Cir.1982) (undistributed property held by a trustee under chapter 13 remained property of the estate after confirmation of a plan); United States v. Ivers, 512 F.2d 121 (8th Cir.1975). In Ivers, a case under the pre–Bankruptcy–Code version of section 153,[2] this court

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. This statute states in pertinent part:
 Whoever knowingly and fraudulently appropriates to his own use ... any property ... belonging to the estate of a debtor which came into his

charge as trustee, custodian ... or other officer of the court, shall be fined ... or imprisoned ... or both.

2. Prior to the enactment of the Bankruptcy Code, section 153 read in pertinent part as follows:

upheld the defendant's conviction for misappropriating a check made out in the name of the bankrupt and delivered to Ivers after the court had closed the bankruptcy case and had discharged Ivers as trustee. As with Unger, Ivers claimed that the government should have been required to prove that the check belonged to the estate in bankruptcy and not the bankrupt. In upholding his conviction, the court stated that since the funds had not been administered by it prior to the time it closed the bankruptcy case, "such [funds] ... remain[ed] in *custodia legis* of the bankruptcy court," and an asset of the estate. *Ivers*, 512 F.2d at 124; *see also* 11 U.S.C. § 554(d) (1988) (stating that property "that is not abandoned ... and that is not administered ... remains property of the estate").

We fail to see any meaningful distinction between the facts of *Ivers* and the facts here. Where a trustee, custodian, or other person charged with the assets of the estate of a debtor deals with those assets in complete contravention of a confirmed plan, such assets remain effectively unadministered; they are in *custodia legis* of the bankruptcy court and property of the estate. Here, you will recall, the Plan called for Unger to deposit the Crystal Oil and Lion Oil funds into a specific account. He was to use the whole of the Crystal Oil funds to pay creditors and the Lion Oil funds to pay costs and expenses, placing any monies left over into a nonliquidating trust. In contravention of the Plan, Unger, as earlier indicated, deposited the funds into his own personal account and used them for his personal benefit. He now invites the court to find that it lacks jurisdiction under section 153 to prosecute him because of the status of the funds. We must decline this invitation. Unger will not be allowed to reap the benefits of a relationship with the bankruptcy court and then claim that he is immune from federal

prosecution when he abuses that relationship. We hold that the manner in which Unger handled the funds in his custody caused them to remain property of the estate, that the bankruptcy court continued to have jurisdiction over them, and that Unger violated section 153 when he misappropriated the money.

In addition to a bankruptcy court's jurisdiction over unadministered assets, a bankruptcy court may explicitly retain jurisdiction over aspects of a plan related to its administration and interpretation. *In re Johns–Manville Corp.*, 97 B.R. 174, 180 (Bankr.S.D.N.Y.1989). In Article VI section 6.1 of Dews's reorganization plan, the court retained jurisdiction to hear and determine disputes under the Plan and to issue orders as may be appropriate under section 1142. Section 1142 states in pertinent part:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan *shall carry out the plan* and shall comply with any orders of the court.

(b) The court may direct the debtor and any other necessary party ... to perform any other act ... that is *necessary for the consummation of the plan.*

11 U.S.C. § 1142 (1988) (emphasis added). If the court retains jurisdiction to ensure that the parties fulfill the intent and specific provisions of the plan, then it must buttress this jurisdiction with the ability to have coercive measures applied, including the threat of prosecution under section 153. To hold otherwise would allow trustees, custodians, and others charged with assets of an estate to act with apparent impunity after confirmation of a plan, subject only to the restraints of moral and state law. Because Congress has given the federal courts exclusive jurisdiction in bankruptcy,

---

Whoever knowingly and fraudulently appropriates to his own use ... any property ... belonging to the *estate of a bankrupt* which came into his charge as trustee, ... custodian ... or other officer of the court, shall be fined ... or imprisoned ... or both.

18 U.S.C. § 153 (1976) (emphasis added). Under the Bankruptcy Code, "estate of the debtor" was substituted for "estate of the bankrupt." *See supra* note 1. However, this does not change the analysis.

we cannot support the thesis that we must rely on state law or the vicissitudes of conscience to further the policies of a confirmed plan. Given the circumstances of this case, the federal court properly exercised jurisdiction under section 153.

 Notwithstanding the analysis above, a defendant may not allege the absence of an element of the crime to question the jurisdiction of the court once he pleads guilty. *See Bartholomew v. United States*, 286 F.2d 779, 781 (8th Cir.1961) (holding defendant, by pleading guilty, admits all essential elements of offense charged). Property of the estate under section 153 is an element of the crime, which Unger, by his guilty plea, implicitly accepted as being in existence.

### B. Withdrawal of the Guilty Plea

 Before sentencing, a defendant may withdraw his plea of guilty upon a showing of any fair and just reason. Fed. R.Crim.P. 32(d); *see also United States v. Boone*, 869 F.2d 1089 (8th Cir.1989). Unger's claim of a fair and just reason hinges on his belief that once the bankruptcy court confirmed the Plan, property of the estate ceased to exist and the federal court lost its jurisdiction under section 153. Unger's claim is without merit and no fair and just reason to withdraw his guilty plea exists.

## III. CONCLUSION

We have examined all the other issues raised by the defendant and find them without merit. The judgment of the district court is affirmed.