_____

No. 95-3039MN
_____


In re:  D & P Partnership;        *
D & P Partnership II,             *
                                  *
          Debtors.                *
                                  *
                                  *
--------------------------        *
                                  *
Norwest Equipment Finance, Inc.;*
Norwest Bank Minnesota Central, *
N.A.; Norwest Bank Minnesota,     *
N.A. (collectively, "Norwest"); *
Stearns County National Bank of *
Albany (SCNB),                    *   On Appeal from the United
                                  *   States District Court
          Appellees,              *   for the District of
                                  *   Minnesota.
     v.                           *
                                  *
                                  *
Mahendra Nath; Ashok Mehta;       *
Torchwood Franchise Group,        *
Inc.,                             *
                                  *
          Appellants.             *
                                  *
                                  *
D & P Partnership; D & P          *
Partnership II,                   *
                                  *
          Defendants.             *

                      _____

          Submitted:  May 13, 1996

             Filed:  July 31, 1996
                      _____

Before RICHARD S. ARNOLD, Chief Judge, MAGILL and MURPHY, Circuit Judges.
                      _____

RICHARD S. ARNOLD, Chief Judge.

The defendants in this case, collectively referred to as the Nath Group, purchased assets from a bankrupt debtor, D & P Partnership. At the time of the purchase, the state of Minnesota imposed a sales tax on such sales, which tax was paid. Subsequently, Minnesota repealed the sales tax with retroactive application, so that the tax on this sale was subject to a refund. The Bankruptcy Court held that the plaintiffs in this case, secured creditors of D & P, were entitled to the proceeds of that refund. The District Court affirmed. We disagree and reverse.

I.

In January of 1991, D & P filed a Chapter 11 bankruptcy petition. In time, D & P decided that a self-directed liquidation of its assets was its best alternative, and its creditors, including the plaintiffs, acquiesced in that decision. The Nath Group and two other entities submitted offers to purchase 17 of D & P's Burger King restaurants.

Naturally, the three offers were not identical. D & P put all three offers before the Bankruptcy Court and allowed its creditors to choose which offer they wished to accept. They chose the Nath Group's offer. Further negotiation led to an agreement that D & P would relinquish any claim to the proceeds of the sale in favor of its creditors. The Nath Group, in turn, would receive title to the assets free and clear of any existing liens.

On the eve of the hearing at which the Bankruptcy Court would be asked to approve the agreement, a problem was discovered. The balance in D & P's operating account was not sufficient to pay operating expenses, administrative expenses, and the sales taxes on

the sale if all of the proceeds were paid over to the creditors.  In an attempt to remedy this problem, the Nath Group was asked to increase its offer, which it refused to do.  Instead, the creditors, plaintiffs in this case, agreed to accept less and allow part of the proceeds of the sale to be allocated to the newly discovered expenses.  This plan met with the approval of the Bankruptcy Court.  The sale was closed on October 31, 1991.  Subsequently, the Nath Group purchased two more restaurants from D & P under an identical agreement.  The required sales taxes were paid over to the state of Minnesota for both sales.

In January of 1992, the sales-tax statute was amended to exclude the sale of substantially all of the assets of a business from the list of taxable events.  Minn. Stat. § 297A.25 Subd. 12 (Supp. 1996).  This amendment was retroactive to June 30, 1991, meaning that the sales taxes in this case were subject to a refund.  D & P applied for the refund, but was denied by the Minnesota Department of Revenue.  It did not appeal that ruling.  On the other hand, the Nath Group applied for, and was granted, the refund.

The plaintiffs then sued the Nath Group in the Bankruptcy Court to have the proceeds of the refund paid over to them,[1] asserting two theories in support of their claim.  First, they argued that the agreement between the parties required D & P, not the Nath Group, to pay the sales taxes.  Thus, the refund was property of the estate, and should go to the plaintiffs as creditors.  Second, they argued that the Nath Group would be unjustly enriched if it were allowed to keep the refund.  The Bankruptcy Court agreed with both of these theories, and ordered the Nath Group to relinquish the refund.  The District Court affirmed that decision.

---

[1]D & P was made a party to the suit, but did not participate.

-3-

## II.

We must first decide whether we have subject-matter jurisdiction to hear this case. Generally, once the reorganization plan has been confirmed, as D & P's plan has been, the estate of the debtor, and thus the bankruptcy court's jurisdiction, ceases to exist. United States v. Unger, 949 F.2d 231, 233 (8th Cir. 1991). However, a bankruptcy court may explicitly retain jurisdiction over aspects of a plan related to its administration and interpretation. Id. at 234.

The Bankruptcy Court retained jurisdiction over the subject matter of this lawsuit. Article X of the Plan addresses the continuing jurisdiction of the Bankruptcy Court. It reads that the "Court shall retain jurisdiction until this Plan has been fully consummated" for various purposes. Among those purposes are the "interpretation and enforcement of the terms of this Plan."

We think this settles any jurisdictional question. Certain funds were paid into the bankruptcy estate by the Nath Group. Those funds were to be used to pay sales taxes and the plaintiffs, among other things. The state of Minnesota saw fit to change its law and refund the sales taxes. The plaintiffs now argue that the "terms of this Plan" require the Nath group to pay the refund to the debtor so that it can be turned over to them. We do not see what could more clearly be a matter of "interpretation and enforcement of this plan" over which the Bankruptcy Court retained jurisdiction than is the plaintiffs' request. We hold that the Bankruptcy Court, and this Court, have jurisdiction over the subject matter of this case.

## III.

We turn, then, to the merits of this case. At the outset, it is important to realize that the plaintiffs are not claiming that

-4-

they are entitled to the tax refund under the refund statute, Minn. Stat. § 289A.50 (Supp. 1996).  Indeed, the Supreme Court of Minnesota has made it clear that purchasers, not sellers, are entitled to tax refunds.  See Acton Construction Co. v. Commissioner of Revenue, 391 N.W.2d 828, 832-33 (Minn. 1986); Minn. Stat. § 289A.50, subd. 2.  Thus, the interpretation of the Minnesota statute is not before us.  Under the statute, there is no doubt that the Nath group has a right to the refund.  We must interpret the terms of the contract between the parties and apply the equitable principle of unjust enrichment to determine whether either one requires the Nath Group to surrender the proceeds of the refund to the plaintiffs, legal questions over which we exercise plenary review.

The gravamen of the plaintiffs' argument is that the contract between the parties shifted the responsibility of funding the sales taxes from the buyer, the Nath Group, to the seller, D & P and its creditors.  The Nath Group, it is argued, intended to part forever with the total purchase price, and had no interest in how those funds were utilized.  It follows, then, that any refund would belong to the bankruptcy estate because the estate "paid" the sales taxes.  In other words, it is argued that the contract between the parties mandates that the seller is entitled to the refund.  See Acton, 391 N.W.2d at 832 n.5.

Several portions of the writings between the parties are important.  In paragraph 2.1 of the Asset Purchase Agreement, the Nath Group agrees to pay a set amount for the assets.  Paragraph 1.5, the critical portion of the writings for present purposes, reads that

> The purchase price payable by the Buyers as set forth in section 2.1 is inclusive of any sales or use tax payable. Sellers agree to pay any sales tax owing, however, Sellers shall pay such sales tax from the proceeds of the Purchase Price (as defined in Section 2.1).  Accordingly,

the dollar amounts distributed to the Sellers' designees may be reduced to pay any sales tax owing.

Finally, the Stipulation Relating to Sale Proceeds, Settlement of Administrative Claim and Transfer of Franchises (the Stipulation) provides that D & P "shall receive no proceeds from the sale and shall be liable for any expenses of the Sale," including sales taxes.[2]

This language at most does nothing to change the statutory presumption that purchasers pay sales taxes and are consequently entitled to refunds when the taxes are repealed. Arguably, it refutes the plaintiffs' argument altogether. Paragraph 2.1 establishes the purchase price. That price, according to paragraph 1.5, includes sales taxes. The seller is directed to remit those taxes to the state. As a consequence, the funds distributed to the plaintiffs were reduced. This language, as we read it, says the Nath Group "paid" the sales taxes by providing the funds to meet that liability. The seller merely passed those funds on to the state.

The plaintiffs ask us to look outside the agreement in order to bolster their argument. First, as the plaintiffs' lawyer pointed out at oral argument, this sale was not a typical sale between willing parties on the open market. It was a self-directed liquidation of the assets of a bankrupt debtor. Thus, the plaintiffs, as creditors, were merely trying to minimize losses.

Second, when the funding shortfall was discovered the Nath Group was asked to increase its offer. Its reply was that the offer on the table was what it was willing to pay for the business, and all that it was willing to pay. Moreover, the chairman of the

---

[2]Identical documents were executed for both the 17-restaurant sale and the two-restaurant sale.

Nath Group commented, in a deposition, that he never contemplated paying an additional amount for sales taxes when he formulated his offer. These facts, we are told, show that the Nath Group intended to part forever with the purchase price and leave the plaintiffs with the responsibility of coping with any new expenses that might arise.

Finally, the plaintiffs remind us that they were the ones who were forced to sacrifice funds when the shortfall was discovered. They gave up a portion of the proceeds in order to facilitate the sale. If some of those proceeds are to be returned, it is only fair that they, not the Nath Group, recoup those funds.

These additional facts do nothing to alter our conclusion. We recognize that the Nath Group is recouping funds that it never expected to recoup when it parted with them, but so would the plaintiffs if we held that they were entitled to the refund. The Minnesota statute entitles the Nath Group to a refund of the sales taxes. At minimum, there is no provision in the contract that changes that outcome.

This reasoning also disposes of the plaintiffs' unjust-enrichment claim. Under the Minnesota precedents, unjust enrichment occurs when one party enriches himself at the expense of another illegally or inequitably. See Christle v. Marberg, 421 N.W.2d 748, 751 (Minn. App. 1988). Here, the plaintiffs argue that the Nath Group's action in retaining the refund is unlawful because it violates the terms of the contract. We have already held that, at a minimum, the contract is not contradicted by allowing the Nath Group to retain the refund. Thus, to do so cannot be unlawful and the unjust-enrichment claim must be rejected. There is nothing inequitable about allocating money in accordance with a statute, and in a manner not contrary to the parties' agreement.

IV.

The judgment of the District Court, affirming the Bankruptcy Court, is reversed.  The Nath Group is entitled to retain the proceeds of the tax refund, and the Bankruptcy Court, on remand, is instructed to enter judgment accordingly.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.