STATE OF MINNESOTA

IN SUPREME COURT

A15-1322

Tax Court                                                                    Hudson, J.
                                                    Took no part, Stras, Chutich, JJ.


Kimberly-Clark Corporation & Subsidiaries,

                    Relators/Cross-Respondents,

vs.                                                                 Filed:  June 22, 2016
                                                            Office of Appellate Courts

Commissioner of Revenue,

                    Respondent/Cross-Appellant.


_____

Walter A. Pickhardt, Faegre Baker Daniels LLP, Minneapolis, Minnesota, and

Amy L. Silverstein, Edwin P. Antolin, Silverstein & Pomerantz LLP, San Francisco, California, for relators/cross-respondents.

Alan I. Gilbert, Solicitor General, Alethea M. Huyser, Assistant Solicitor General, and Michael Everson, Assistant Attorney General, Saint Paul, Minnesota, for respondent/cross-appellant.

Ellen F. Rosenblum, Attorney General of Oregon, Paul L. Smith, Deputy Solicitor General of Oregon, Inge D. Wells Assistant Attorney-in-Charge, Darren Weirnick, Senior Assistant Attorney General, Oregon Department of Justice, Salem, Oregon, for Amici Curiae States of Oregon, Alabama, California, Colorado, Hawaii, Idaho, Michigan, Missouri, Montana, New Mexico, North Dakota, Texas, Washington, and the District of Columbia.

Thomas R. Muck, Fredrikson & Byron, P.A., Minneapolis, Minnesota, for Amicus Curiae The Council on State Taxation.

1

William Z. Pentelovitch, Maslon LLP, Minneapolis, Minnesota, and

Sheldon H. Laskin, Washington, D.C., for Amicus Curiae Multistate Tax Commission.

Richard L. Masters, Masters Mullins & Arrington, Louisville, Kentucky and;

Jeffrey B. Litwak, Portland Oregon, for Amici Curiae The Interstate Commission for Juveniles, The Association of Administrators of the Interstate Compact on the Placement of Children, and Jeffrey B. Litwak.

_____

## S Y L L A B U S

In enacting the Multistate Tax Compact, Minn. Stat. § 290.171 (1984), the Legislature did not unmistakably promise not to repeal Articles III and IV of that Compact.

Affirmed.

## O P I N I O N

HUDSON, Justice.

This appeal presents a constitutional challenge to a legislative repeal of provisions of a multistate tax compact that permitted corporate taxpayers, for a period of time, to calculate their Minnesota tax liability using a formula promulgated by a multistate tax commission. In 2013, relators Kimberly-Clark Corporation and its subsidiaries (collectively "Kimberly Clark") sought to amend their Minnesota corporate franchise tax returns for tax years 2007 through 2009 by re-calculating their state tax liability using an income apportionment formula that the Minnesota Legislature enacted in 1983, Act of June 14, 1983, ch. 342, art. 16, § 1, 1983 Minn. Laws 2168, 2339, but later repealed, Act

of May 28, 1987, ch. 268, art. 1, § 74, 1987 Minn. Laws 1039, 1098 (repealing Articles III and IV in Minn. Stat. § 290.171). The Commissioner of Revenue denied the corresponding refund claims that accompanied the amended returns. Kimberly Clark appealed to the tax court, arguing that its refund claims were allowable because the Legislature's enactment of the Multistate Tax Commission's apportionment formula was a contractual obligation that was unconstitutionally impaired when the 1987 Legislature repealed the provisions that authorized the use of that formula.

On June 19, 2015, the Minnesota Tax Court, sitting en banc, concluded that the Legislature's 1987 repeal of the apportionment formula was constitutional and therefore the Commissioner properly denied Kimberly Clark's refund claims. Kimberly Clark thereafter petitioned our court for review pursuant to Minn. Stat. § 271.10 (2014).[1] Because we conclude that the Legislature made no unmistakable commitment in 1983 when it enacted section 290.171 that was impaired when the Legislature later repealed portions of that statute, we affirm.

I.

The resolution of this appeal requires a basic understanding of Minnesota's taxation of the income earned by multi-state businesses and the multistate compact developed to facilitate uniformity in that process. We therefore begin with an overview of the relevant tax principles and statutes.

---

[1]    The Commissioner filed a cross-appeal to challenge the tax court's conclusion that she failed to adequately preserve her argument on the advisory nature of the compact.

Minnesota uses the unitary-business/formula-apportionment method to determine a unitary business's local tax base. Minn. Stat. § 290.191 (2014). Under this method, the income of a unitary business is combined, then allocated to individual states based on an apportionment formula that generates a fair share of the combined income attributable to each state for tax purposes. *See, e.g.*, *Caterpillar, Inc. v. Comm'r of Revenue*, 568 N.W.2d 695, 696-97 (Minn. 1997) (explaining that "[c]ombined reporting is an accounting device" used to properly and fairly approximate the income of a multi-state business that is attributable to the business's activities in the taxing state). Kimberly Clark constitutes a combined group for purposes of Minnesota's corporate franchise tax, with Kimberly-Clark Corporation as the reporting entity for the combined group. Kimberly Clark has done business in Minnesota since 1958 and has filed Minnesota tax returns since at least 1983. During the tax years in issue (2007, 2008, and 2009), Kimberly Clark engaged in a unitary, multi-state business and therefore used an apportionment method to report its Minnesota tax liability.

It is undisputed that, during the tax years in issue, multistate businesses could: (1) apportion income to Minnesota using the apportionment formula set forth in Minn. Stat. § 290.191, subd. 2 (2008), which weighted one factor—sales—more heavily than the other two factors in the formula—property and payroll; or (2) petition the Commissioner of Revenue to permit the use of an alternative method to determine the taxpayer's income attributable to Minnesota. Minn. Stat. § 290.20, subd. 1 (2014) (providing for petition process). The dispute in this case concerns whether, during the tax

4

years in issue, multistate businesses *also* enjoyed a third option, namely, the option to use the apportionment formula that was part of Article IV of Minn. Stat. § 290.171 (1984), between 1983 and its repeal in 1987. *See Firstar Corp. v. Comm'r of Revenue*, 575 N.W.2d 835, 838 (Minn. 1998) (explaining that "Article IV contained an optional apportionment formula that taxpayers could elect to use"); *see also* Act of May 28, 1987, ch. 268, art. 1, § 74, 1987 Minn. Laws 1039, 1098 (repealing Articles III and IV in Minn. Stat. § 290.171).

This optional apportionment formula, enacted in Minnesota in 1983, was based on model legislation that was part of the Multistate Tax Compact. The model legislation was developed by a state tax workgroup established in the wake of the United States Supreme Court's decision in *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450 (1959). *See U.S. Steel Corp. v. MultiState Tax Comm'n*, 434 U.S. 452, 455-56 (1978) (reviewing the origins of the Multistate Tax Compact). The purposes of the Compact, as stated in Article I, included "[f]acilitat[ing] proper determination of state and local tax liability of multistate taxpayers" and "[p]romot[ing] uniformity or compatibility in significant components of tax systems." Minn. Stat. § 290.171, art. I, §§ 1-2.[2] To facilitate these and other goals, Articles III and IV, which are at the center of the parties' dispute in this appeal, incorporated almost verbatim the uniform act drafted by the

---

[2]   The citations to the various articles of the Multistate Tax Compact are to section 290.171 as enacted by the 1983 Minnesota Legislature. *See* Minn. Stat. § 290.171 (1984). The original version of the model legislation that became the Multistate Tax Compact is available at http://www.mtc.gov/The-Commission/Multistate-Tax-Compact.

National Conference of Commissioners on Uniform State Laws in 1957, known as the Uniform Division of Income for Tax Purposes Act. *See Firstar Corp.*, 575 N.W.2d at 838 (explaining the provisions of the Uniform Act). Article III, section 1, allowed a multistate taxpayer to "elect to apportion and allocate his income in the manner provided by the laws of [a member] state . . . without reference to this compact" or "in accordance with Article IV" of the Compact. Minn. Stat. § 290.171, art. III, § 1. Article IV, in turn, provided for the apportionment of income by a three-factor, equally weighted formula using sales, payroll, and property.[3] *Id.*, art. IV, § 4.

Article VI established the Multistate Tax Commission, which included one "member" from each "party state." *Id.*, art. VI, § 1. Article VI further required that any binding action of the Commission be approved by a majority of members, required the Commission to adopt bylaws, established the Commission's governing and financial structure, and enumerated the powers of the Commission. *Id.*, art. VI, §§ 2-4.

Article IX provided for arbitration of "disputes concerning apportionments and allocations" by taxpayers "dissatisfied with the final administrative determination of the

---

[3]     When the Legislature repealed Articles III and IV in 1987, *see* Act of May 28, 1987, ch. 268, art. 1, § 74, 1987 Minn. Laws 1039, 1098, an apportionment formula that used the same factors to apportion income by a fraction of the property factor plus the payroll factor plus the sales factor was codified. *See* Minn. Stat. § 290.191, subd. 2 (1988). The weight attributed to the individual factors has varied over time. In 2005, the Legislature amended section 290.191 to provide, beginning in 2007, for a graduated annual increase for the weight given to the sales factor with corresponding decreases in the property and payroll factors until 2014, when apportionment was based exclusively on the sales factor. Act of July 13, 2005, 1st Spec. Sess., ch. 3, art. 3, § 13, 2005 Minn. Laws 2273, 2330; *see also* Minn. Stat § 290.191, subd. 2(3)(b) (2014).

tax agency of the state" and established procedures for such arbitrations. *Id.*, art. IX. Article X provided in section 1 that the Compact "shall enter into force when enacted into law by any seven States." *Id.*, art. X, § 1. Article X also provided: "Any party State may withdraw from this compact by enacting a statute repealing the same. No withdrawal shall affect any liability already incurred by or chargeable to a party State prior to the time of such withdrawal." *Id.*, art. X, § 2.

Finally, Article XII of the Compact provided that it "shall be liberally construed so as to effectuate the purposes thereof." *Id.*, art. XII. It further provided that the provisions of the Compact were "severable." *Id.* If any portion of the Compact was declared unconstitutional, "the compact shall remain in full force and effect as to the remaining party states and in full force and effect as to the state affected as to all severable matters." *Id.*

In 1987 the Minnesota Legislature repealed only Articles III and IV of Minn. Stat. § 290.171. Act of May 28, 1987, ch. 268, art. 1, § 74, 1987 Minn. Laws 1039, 1098. In 2013 the Legislature repealed the remaining provisions of Minn. Stat. § 290.171. Act of May 23, 2013, ch. 143, art. 13, § 24, 2013 Minn. Laws 2445, 2680. Kimberly Clark contends that by enacting section 290.171 in 1983, the option provided in Article III to use the equally weighted formula provided in Article IV was part of a binding multistate tax compact that Minnesota was obligated to continue to make available to taxpayers unless and until the State fully withdrew from the Compact. Thus, Kimberly Clark argues, the 1987 repeal of only Articles III and IV, without an accompanying full

withdrawal from the Compact itself, did not terminate that binding obligation. Further, to conclude otherwise Kimberly Clark contends would impair a contractual obligation in violation of the Contract Clauses of the U.S. and Minnesota Constitutions. We must decide if the Minnesota Legislature's decision in 1987 to repeal Articles III and IV of section 290.171, without repealing the entirety of the statute, impaired any contractual obligation to the detriment of Kimberly Clark.

## II.

Because we review only legal issues in this appeal, our standard of review is de novo. *See Nelson v. Am. Family Ins. Grp.*, 651 N.W.2d 499, 503 (Minn. 2002) (holding that where the trial court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion that appellate courts review de novo); *Progressive Specialty Ins. Co. v. Widness ex rel. Widness*, 635 N.W.2d 516, 518 (Minn. 2001); *Lake Superior Paper Indus. v. State*, 624 N.W.2d 254, 258 (Minn. 2001). We also presume that statutes are constitutional, *Greer v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 724 (Minn. 2008); the party that asserts otherwise bears a heavy burden to overcome that presumption. *Caterpiller, Inc.*, 568 N.W.2d at 697-98 (stating that the challenger must demonstrate unconstitutionality beyond a reasonable doubt).

Kimberly Clark argues that Minnesota's 1983 enactment of the Multistate Tax Compact formed a binding contract that, until the State withdrew from the Compact in

8

2013, prevails over any conflicting state law.[4]  The Commissioner disagrees, arguing that the Compact is advisory because it does not meet the criteria for a binding contract set out in *Northeast Bancorp, Inc. v. Board of Governors of Federal Reserve System*, 472 U.S. 159 (1985).

In its opinion, the tax court focused on whether the Commissioner of Revenue waived or preserved her argument that the Compact is an advisory model law, rather than a binding contract.  The parties likewise devote considerable attention to this issue.  We need not resolve this debate, however, because the fundamental legal issue we must decide is whether the Legislature's enactment of the Compact—specifically Articles III and IV—created a contractual obligation that prohibited the Legislature from later

---

[4]      Kimberly Clark cites to the Compact Clause of the U.S. Constitution, which states: "No State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State . . . ."  U.S. Const. art I, § 10, cl. 3.  Read literally, the Compact Clause "would require the States to obtain congressional approval before entering into any agreement among themselves, irrespective of form, subject, duration, or interest to the United States."  *U.S. Steel*, 434 U.S. at 459.  The U.S. Supreme Court has rejected this literal interpretation, stating, "application of the Compact Clause is limited to agreements that are directed to the formation of any combination tending to the increase of po1itical power in the States, which may encroach upon or interfere with the just supremacy of the United States," *id.* at 471 (internal quotation marks and citations omitted), and thus, "[c]ongressional consent is not required for interstate agreements that fall outside the scope of the Compact Clause."  *Cuyler v. Adams*, 449 U.S. 433, 440 (1981).  As the parties agree that congressional consent was not required for the Multistate Tax Compact, Kimberly Clark's reliance on the Compact Clause is misplaced.

repeating Articles III and IV of section 290.171 without withdrawing completely from the Compact.[5]

III.

Although Kimberly Clark contends that by enacting the Compact, Minnesota ceded a portion of its own sovereignty in order to benefit from the collective action of multiple states, Kimberly Clark's principal argument is that by enacting the apportionment formula in 1983, the State created a binding obligation that could not be terminated without a full and complete withdrawal from the Multistate Tax Compact— something the State did not do until 2013. Thus, according to Kimberly Clark, the Minnesota Legislature violated the Contract Clauses of the United States and Minnesota Constitutions by simply repealing Articles III and IV of section 290.171. We disagree.

The Contract Clauses of the United States and Minnesota Constitutions prohibit the states from passing laws that "impair[] the Obligation of Contracts." U.S. Const. art. 1, § 10, cl. 1; *accord* Minn. Const. art. 1, § 11. Although we apply a three-part test to evaluate whether legislative action unconstitutionally impairs a contractual obligation,

---

[5] We do not necessarily agree that the Commissioner waived the argument that the compact is advisory in nature but conclude that we need not resolve this issue for the same reasons the tax court articulated: regardless of any waiver, the dispositive issue is whether this compact, as a matter of contract interpretation, constrained the authority of the Minnesota Legislature to repeal portions of a statute that adopted the compact. *See, e.g., Texas v. New Mexico*, 482 U.S. 124, 128 (1987) (stating that even a compact approved by Congress is a contract that "must be construed and applied in accordance with its terms"). The Commissioner, in her cross-appeal, also raised an issue regarding the tax court's interpretation of a Florida apportionment statute. The Florida statute need not be construed to resolve the issues presented by this appeal. Accordingly, we decline to reach this issue as well.

10

*see In re Individual 35W Bridge Litig.*, 806 N.W.2d 820, 834-35 (Minn. 2011) (citing

*Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 410-13 (1983)), the

"prohibition of the Contract Clause is not absolute." *Acton Constr. Co. v. Comm'r of*

*Revenue*, 391 N.W.2d 828, 833 (Minn. 1986). In any event, we do not reach

constitutional issues if the appeal can be resolved on other grounds. *State ex rel.*

*Humphrey v. Philip Morris USA, Inc.*, 713 N.W.2d 350, 355 (Minn. 2006).

We therefore begin with the underlying premise of Kimberly Clark's argument:

the adoption of the Multistate Tax Compact in a legislatively enacted statute was a

binding contractual obligation that continued until the Legislature withdrew from the

Compact by repealing the entirety of section 290.171. Stated otherwise, Kimberly Clark

contends that by enacting section 290.171 in 1983, the Minnesota Legislature could not

later amend that statute, it could only repeal the statute in its entirety. This argument has

no support in the law. *See* Minn. Stat. § 645.27 (2014) ("The state is not bound by the

passage of a law unless named therein, or unless the words of the act are so plain, clear,

and unmistakable as to leave no doubt as to the intention of the legislature.").

Even assuming that the State undertook a contractual obligation to Kimberly Clark

when it enacted Minn. Stat. § 290.171, the obligation was and is invalid. The Minnesota

Constitution states that "[t]he power of taxation shall never be surrendered, suspended or

contracted away." Minn. Const. art. X, § 1; *see also Anderson v. State*, 435 N.W.2d 74,

77 (Minn. App. 1989) ("If the state did attempt to contract away its taxing power to

appellants, the action would be invalid under Minn. Const. art. X, § 1."). Thus,

11

regardless of the language of Minn. Stat. § 290.171, the State is constitutionally barred from surrendering, suspending, or contracting away its authority to amend or repeal tax provisions. "What the legislature has authority to enact it obviously has like authority to amend or even to repeal." *State ex rel. Bergin v. Washburn*, 224 Minn. 269, 273, 28 N.W.2d 652, 654 (1947); *see also Meriwether Minn. Land & Timber, LLC v. State*, 818 N.W.2d 557, 566 (Minn. App. 2012) (stating, in rejecting claims for breach of contract and unconstitutional impairment of contract, that "any promise to be found in a statute is inherently limited by the legislature's power to amend a statute"); *Anderson*, 435 N.W.2d at 80 (rejecting a Contract Clause challenge to the repeal of a tax exemption, stating that when the Legislature enacts a law, it does not "intend[] to create private contractual or vested rights but merely declares a policy to be pursued until the legislature" decides otherwise (internal citation omitted)).

IV.

Having concluded that the mere act of enacting legislation did not bar the Legislature from later amending the enacted statute, we turn to the language of section 290.171. *See Texas v. New Mexico*, 482 U.S. 124, 128 (1987). Based primarily on the so-called "unmistakability doctrine," the tax court concluded that nothing in the language of section 290.171 evidenced a clear, separate, and distinct promise by the State to refrain from amending or repealing Articles III and IV of the statute without also entirely withdrawing from the Compact.

12

"The unmistakability doctrine is a rule of contract construction that provides the sovereign powers of a state cannot be contracted away except in 'unmistakable' terms." *Philip Morris USA*, 713 N.W.2d at 359. The unmistakability doctrine was developed in early Contract Clause cases "to protect state regulatory powers." *Id.* at 359-60 (citing *United States v. Winstar Corp.*, 518 U.W. 839, 871-74 (1996) (plurality opinion)).

> Under this rule that all public grants are strictly construed, we have insisted that nothing can be taken against the State by presumption or inference, and that neither the right of taxation, nor any other power of sovereignty, will be held . . . to have been surrendered, unless such surrender has been expressed in terms too plain to be mistaken.

*Winstar Corp.*, 518 U.S. at 874-75.

In *Philip Morris*, we examined the language of a settlement agreement between the State and certain tobacco companies, in which the State accepted payments from the companies in exchange for a release of the State's claims for damages made in the State's lawsuit against the tobacco companies. 713 N.W.2d at 353. When the Legislature, several years later, imposed a fee on tobacco companies to recoup some of the State's costs related to tobacco use, the tobacco companies sued, arguing that the release terms in the settlement agreement were a "complete bar" to that legislative effort. *Id.* at 353-54. We turned to the unmistakability doctrine to determine whether the settlement agreement supported "a waiver of the legislature's power to enact future revenue measures" in unmistakable terms. *Id.* at 362-63. We reviewed terms in the settlement agreement that released future liabilities, statutory liabilities, and "liabilities of any nature whatsoever," but concluded this language was "insufficiently specific to meet the requirements of" the

13

doctrine because there was no express waiver of the State's right to impose future taxes or fees or regulate the tobacco industry. *Id*. at 363; *see also Winstar Corp.*, 518 U.S. at 874-75 (plurality opinion) (holding in part that the doctrine of unmistakability did not bar enforcement of the relevant government contracts because the contracts' terms did not bind the government's exercise of its sovereign power); *State v. Great N. Ry. Co.*, 106 Minn. 303, 322-23, 119 N.W. 202, 205 (1908) (stating the contract "must be in language and terms too clear to admit of doubt").

Kimberly Clark argues that by enacting the apportionment option in Article III, the State "unmistakably . . . promised to be bound by the Compact's terms until it withdraws from the Compact or the member States collectively agree to amend the Compact." We find no unmistakable or express promise surrendering the State's legislative authority in section 290.171 as enacted in 1983. The statute did provide that the Compact is "enacted into law," Minn. Stat. § 290.171 (1984), and that a member state may withdraw from the Compact "by enacting a statute repealing the same." *Id.*, art. X. But nothing in the statute dictated the "all or nothing" position advanced by Kimberly Clark. At best, the statute is silent, but it is well established that "neither silence nor ambiguous terms in a contract will be construed as effecting a waiver of sovereign authority." *Philip Morris*, 713 N.W.2d at 360 (citing *Winstar*, 518 U.S. at 878 ("[A] contract with a sovereign government will not be read to include an unstated term exempting the other contracting party from the application of a subsequent sovereign act . . . , nor will an ambiguous term of a . . . contract be construed as a conveyance or surrender of sovereign power.")). Nor

14

can we conclude that the directive in Article XI to "implement" Article III of the Compact represents an unmistakable, clear promise to allow multistate taxpayers to utilize the optional apportionment formula until the State withdrew from the Compact. "[T]he legislature uses [mandatory language] to avoid giving discretion to officials, not to abdicate its future amendment authority." *Meriwether Minn. Land & Timber*, 818 N.W.2d at 566.

Kimberly Clark's argument in this appeal is, at base, a "claim for enforcement of contractual obligations" that cannot be recognized without limiting the Legislature's sovereign authority to repeal or amend its own statutory enactments. But, section 290.171 contains no language evidencing a clear surrender of sovereign power on the part of the State. As the tax court articulated, "articles III and IV clearly provide for the apportionment election, but do not contain a separate and distinct promise that the State would not alter or repeal the election." As a result, no provision in section 290.171 represents a clear and unmistakable promise by the State to refrain from amending or repealing Articles III and IV of the statute.[6]

---

[6] Kimberly Clark raised an alternative argument, namely that the repeal of Articles III and IV unconstitutionally impaired its alleged contract with the State. Because we hold that no provision of section 290.171 provides a clear and unmistakable promise from the State to refrain from amending or repealing Articles III and IV of the statute, we need not reach Kimberly Clark's impaired-contract argument. The parties also presented arguments based on standing, the statute of limitations, waiver, and laches. We have considered those arguments and conclude that they need not be addressed based on our holding that the Legislature's enactment of Minn. Stat. § 290.171 did not create a contractual obligation between the Minnesota Legislature and Kimberly Clark prohibiting the Legislature from later repealing Articles III and IV of that statute.

For these reasons, the Legislature's enactment of Minn. Stat. § 290.171—specifically Articles III and IV—did not create a contractual obligation between the Minnesota Legislature and Kimberly Clark that prohibited the Legislature from later repealing Articles III and IV.

Affirmed.


STRAS, J., took no part in the consideration or decision of this case.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.