**Edward G. ANDERSON, et al., Appellants,**

v.

**STATE of Minnesota; James Nichols, Commissioner Department of Agriculture for the State of Minnesota, Respondents.**

No. C3-88-1421.

Court of Appeals of Minnesota.

Jan. 24, 1989.

Gerald J. Seibel, Morris, for appellants.

Hubert H. Humphrey, III, Atty. Gen., and James W. Neher, Special Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by HUSPENI, P.J., and KALITOWSKI and BOWEN *, JJ.

## OPINION

HUSPENI, Judge.

This appeal arises from the district court's determination that repeal of the tax exclusion for seller-sponsored loans under the Family Farm Security Act was not an unconstitutional impairment of a contractual obligation, and that the doctrine of promissory estoppel did not apply to the parties' transactions. We affirm.

## FACTS

Appellants are all sellers of farm real estate sold between January 1, 1978 and June 14, 1984. Each appellant participated in seller-sponsored loans. By meeting certain statutory requirements and signing a Minnesota Department of Agriculture Seller Sponsored Loan Agreement contract, appellants qualified under the Family Farm

Security Act (Act) for a state guarantee of 90% of the outstanding balance of each of the loans in the event of buyer default. The state, as guarantor, was a third party to the underlying contract for deed between each buyer and seller.

Effective January 1, 1978, the Act was amended by the addition of Minn.Stat. § 41.58, subd. 3, which provided an exclusion from gross income of sellers of the interest on seller-sponsored loans under the Family Farm Security Program. The amendment provided:

> The interest earned by the seller of the property on a seller-sponsored loan that is guaranteed by the commissioner shall be excludable from gross income for purposes of chapter 290 for the year in which it is received.

*Id.*

The tax exemption of the interest was applicable to loans made between January 1, 1978 and January 1, 1982 (1978 Minn. Laws, ch. 763, §§ 1, 3, 4). This deadline was extended to apply to qualified loan agreements made through January 1, 1986 (1981 Minn.Laws, ch. 261, § 21). The tax exemption was subsequently repealed for interest received after December 31, 1984 (1985 Minn.Laws, 1st sp. sess. ch. 14, art. 1, §§ 59, 61.) The repeal was part of the 1985 Omnibus Tax Bill, which provided for numerous adjustments and revisions of state tax law covering a wide range of areas.

This action was brought against respondent State of Minnesota and certain officers of the state and challenged the repeal of the income tax exemption which had been authorized under Minn.Stat. § 41.58, subd. 3. Cross-motions for summary judgment were submitted on stipulated facts, including the fact that the appellants, if called as witnesses in this matter, would testify that they entered into seller-sponsored loan agreements at least partially in reliance on the tax exclusion.

Appellants sought relief on two alternative grounds: (1) that Minn.Stat. § 41.58, subd. 3 gave them contractual rights to a tax exemption which were constitutionally

---

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

impaired by the legislative repeal in 1985 or (2) under the doctrine of promissory estoppel the state was estopped from enforcing the repeal of the tax exemption.

The trial court granted respondent's motion for summary judgment and denied the motion for summary judgment brought by appellants. The trial court, in the memorandum incorporated into its order, stated:

> [Appellants] have failed to establish a protected constitutional right to their tax exemptions. They have offered no evidence supporting estoppel except the act itself. Under these facts the exemption is subject to the constitutional prohibition against contracting away the state's taxing power. Also all laws are subject to repeal unless there is evidence of intent to the contrary.

### ISSUES

1. Did repeal of Minn.Stat. § 41.58, subd. 3 (1984) which excluded from state gross income interest on seller-sponsored loans violate the contracts clauses of the state and federal constitutions?

2. Was the state estopped under the doctrine of promissory estoppel from enforcing the repeal of the above-described tax exclusion?

### ANALYSIS

1. Certain rules apply in a case where the constitutionality of a statute is challenged. The trial court based its decision on the stipulated facts and issues before this court. Therefore, there is no obligation to give deference to the determination of the trial court. *Jacobsen v. Anheuser–Busch, Inc.*, 392 N.W.2d 868, 872 (Minn.1986), *cert. denied* 479 U.S. 1060, 107 S.Ct. 941, 93 L.Ed.2d 991 (1987).

> The burden of proof is on the challenging parties to show beyond a reasonable doubt that the act violates some particular constitutional provision.

*Federal Distillers, Inc. v. State*, 304 Minn. 28, 39, 229 N.W.2d 144, 154 (1975) (citation omitted).

> [E]very presumption should be exercised in favor of a statute's constitutionality

and, whenever possible, the merits of a case should be decided without a determination of a statute's unconstitutionality.

*Midland Glass Company, Inc. v. City of Shakopee*, 303 Minn. 134, 138, 226 N.W.2d 324, 326 (1975).

#### a. *Contracts Law*

The trial court found there were contracts between appellants, buyers and the respondent insofar as the respondent guaranteed 90% of the sums due the appellants from the buyers. The trial court correctly noted that "[n]othing in the contract refers to the tax exemption" and apparently found as a matter of law that the tax exemption contained in Minn.Stat. § 41.58, subd. 3 could not have been part of the contracts as an obligation owed by respondent to appellants.

It is well settled that when

> the intent of the parties may be gained wholly from the writing[s], the construction of the contract is for the court.

*Matter of Turners Crossroad Development Co.*, 277 N.W.2d 364, 369 (Minn.1979).

■ The parties stipulated that the copy of the State Department of Agriculture loan agreement form is "substantially identical in all material respects" to their own loan agreements. Examination of the form shows only the following three references to the Act:

> WHEREAS, The State administers the Family Farm Security Act * * * pursuant to Minn.Stat. Ch. 41;
>
> *  *  *  *  *  *
>
> Seller and Buyer warrant the State's interests under this guarantee and Minn. Stat. Ch. 41 shall be superior to but are not intended to act to extinguish the rights and duties between Seller and Buyer.
>
> *  *  *  *  *  *
>
> This Agreement may also be terminated with the written consent of Buyer, Seller, and the State or upon a sale or conveyance pursuant to Minn.Stat. Ch. 41.59.

Appellants may have known of the existence of the income tax exclusion, and the

loan forms did refer to Minn.Stat. Ch. 41, the chapter containing the income tax exclusion. These two factors, however, cannot mandate that the tax exclusion be considered a contractual obligation of respondent and thus create a private contractual right to a tax exclusion for appellants.

> Increasing taxation or adding a new tax does not impair the obligation of a contract. It is true that the law, as it existed at the time the contract was made, is a part of the contract, but so is the law with reference to the state's power of taxation.

*Wiseman v. Gillioz,* 192 Ark. 950, 958, 96 S.W.2d 459, 463 (1936).

Also,

> The imposition of a new tax, or an increase in the rate of an old one, is one of the usual hazards of business enterprise: seldom, if ever, does such an event impair the obligation of a pre-existing contract.

*John McShain, Inc. v. District of Columbia,* 205 F.2d 882, 883 (D.C.Cir.1953) (citation omitted), *cert. denied* 346 U.S. 900, 74 S.Ct. 227, 98 L.Ed. 400 (1953).

The written agreements between appellants and respondent make no reference to the income tax exclusion. The dominant message of the parties' written contracts was limited to respondent's guarantee of 90% of the purchase price. Other references to the Act in the parties' written contract are too general to justify an interpretation which would include the tax exclusion as a contractual obligation of respondent. Our determination that the tax exclusion was not a contractual provision leads to the inevitable conclusion that appellants could not validly raise the question of constitutional impairment of a contractual obligation and, thus, we may affirm the trial court on that basis.

### b. *State Constitution Taxing Power Clause*

■ Assuming, however, for the sake of further analysis, that respondent did attempt to undertake as a contractual obligation maintenance of the tax exclusion, this obligation would still be invalid *ab initio*. The reserved power doctrine of the Minn. Const. art. X, § 1 provides:

> The power of taxation shall never be surrendered, suspended or contracted away.

> [T]he broad, all-comprehensive language [then contained in article IX, section 1 of the state constitution] leaves no doubt that it was intended to prevent any impairment of the taxing power in any manner whatever.

*In re Minnehaha Parkway,* 167 Minn. 258, 260, 209 N.W. 939, 940 (1926). The plain language of article X, § 1 forbids the state to contract away the power to tax. It would thus have been *ultra vires* for respondent to grant to appellants a permanent tax exclusion as a contractual right.

Appellants argue, however, that several cases have upheld for various entities the validity of certain exclusions from taxation. These cases which appellants cite, however, contain no question of impairment of contract or contracting away the state's power to tax. *See Hassler v. Engberg,* 233 Minn. 487, 48 N.W.2d 343 (1951); *State v. City of Hudson,* 231 Minn. 127, 42 N.W.2d 546 (1950); and *Petition of Board of Foreign Missions of Augustana Synod,* 221 Minn. 536, 22 N.W.2d 642 (1946). While the holdings of all these cases were based at least in part on various clauses in Minn. Const. art. X, § 1 (formerly designated as art. IX, § 1)—the taxation power—none of these cases was based on contracting away the state's power to tax, or on the unconstitutional impairment of a contract. They are thus inapposite to this case.

If the state did attempt to contract away its taxing power to appellants, the action would be invalid under Minn. Const. art. X, § 1.

### c. *Contracts Clauses*

■ Article I, section 11 of the 1974 Restructured Constitution of Minnesota provides in pertinent part:

> No * * * law impairing the obligation of contracts shall be passed.

Similarly, Article I, Section 10 of the United States Constitution provides:

No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *.

If we were to carry our analysis still further and assume both the contractual obligation of respondent to maintain the tax exclusion and the validity of that obligation under art. X, § 1 of the Minnesota Constitution, we would again conclude that repeal of the tax exclusion was not barred by the contracts clauses of the state and federal constitutions.

The Minnesota Supreme Court in *Jacobsen v. Anheuser-Busch, Inc.*, 392 N.W.2d 868, 872 (Minn.1986) used a three pronged analysis for both the state and federal contracts clauses, based on the analysis presented in *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–13, 103 S.Ct. 697, 704–05, 74 L.Ed. 2d 569 (1983).

First, a court must consider whether the state law operates as a substantial impairment of a contractual obligation. Second, if there is such substantial impairment, the court considers whether the state has demonstrated a significant and legitimate public purpose. Third, the state action is examined

> in the light of this public purpose to see whether the adjustment of the rights and liabilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the law's adoption.

*Jacobsen*, 392 N.W.2d at 872 (footnote omitted).

(i) The first prong of the *Jacobsen* analysis focuses on whether the repeal of Minn. Stat. § 41.58, subd. 3 operated as a substantial impairment to a contractual obligation of respondent. If the tax exemption was an "obligation" of respondent under the contract, repeal of the tax exemption would obviously impair this obligation. Further, if the tax exemption repeal is characterized as a total destruction of a contractual obligation, substantial impairment would be met. *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 26, 97 S.Ct. 1505, 1519–20, 52 L.Ed.2d 92 (1977). However, in this case, aside from their assertion of impairment, appellants do not provide an explanation to support their claim that repeal of the tax exclusion substantially impaired an obligation owed to them by respondent.

Respondent, on the other hand, does provide support for the contrary assertion, that the repeal of the tax exemption did not substantially impair any obligations under the contracts. Respondent points out that repeal of the tax exemption was part of an omnibus tax bill that generally had the effect of lowering income taxes, including those of appellants. Also, as respondent asserts, the compensatory legislation of 1986, when combined with the generally lower tax rates of the 1985 omnibus tax legislation, tends to mitigate the effect of any contractual impairment attributable to repeal of the tax exemption.

(ii) If a state statute is a substantial impairment to contractual obligations, under the second prong of *Jacobsen* the state must demonstrate a "significant and legitimate public purpose behind the legislation." *Jacobsen* at 872.

Appellants contend that there was no significant and legitimate public purpose behind the repeal of the tax exemption. They assert the purpose of the repeal could not have been to raise revenue, or else it would have been nonsensical for the legislature to eliminate the tax exemption one year while enacting legislation the following year to increase state expenditures to "compensate" those who lost the tax exemption.

Respondent, however, asserts a significant and legitimate public purpose in allowing the legislature considerable flexibility to respond to everchanging social and economic needs in revising the tax statutes. Considering the scope of the 1985 omnibus tax bill, the broader view as stated by respondent is persuasive. The caption of Chapter 14–H.F. No. 10, which contained the repealer, shows the wide scope of the legislation:

> An act relating to financing and operation of state and local government; simplifying Minnesota income tax law by increasing conformity to federal income

tax law; changing income tax rates, rate brackets, credits, and deductions; providing for computation of interest on overpayments; reducing the estate tax; changing corporate income tax provisions; rescheduling payments and increasing the budget reserve; reducing sales tax rate on farm machinery and providing sales tax exemptions; changing taxation of agricultural gasoline; changing the tax credit on fermented malt beverages; changing motor vehicle excise taxes for certain automobiles; authorizing lodging taxes for towns and unorganized territories; recodifying property tax law; changing property tax exemptions, classes, classification ratios, and credits;  * * *

1985 Minn.Laws ch. 14–H.F. No. 10.

The repeal of the tax exemption should not be evaluated in isolation but as part of a comprehensive legislative package to deal with that delicate task of adjusting benefits and burdens under the tax laws in the light of current conditions.  Seen in these broader terms, there is a significant and legitimate public purpose behind the repeal of the tax exemption.

> The equitable distribution of the costs of government through the medium of an income tax is a delicate and difficult task.  In its performance experience has shown the importance of reasonable opportunity for the legislative body, in the revision of tax laws, to distribute increased costs of government among its taxpayers in the light of present need for revenue and with knowledge of the sources and amounts of the various classes of taxable income during the taxable period preceding revision.  Without that opportunity accommodation of the legislative purpose to the need may be seriously obstructed if not defeated.

*Welch v. Henry,* 305 U.S. 134, 149, 59 S.Ct. 121, 126–27, 83 L.Ed. 87 (1938), cited in *United States v. Darusmont,* 449 U.S. 292, 298, 101 S.Ct. 549, 552, 66 L.Ed.2d 513 (1981).

(iii) The third prong of the *Jacobsen* test is whether the

adjustment of the rights and liabilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the law's adoption.

*Jacobsen* at 872.

This third prong of the *Jacobsen* test is based on language in *Energy Reserves,* wherein the state of Kansas had implemented new regulation of intrastate natural gas price contracts including limitations on indefinite price escalator clauses.  The United States Supreme Court found no unconstitutional impairment of contractual obligations, and addressed the third prong of the test in terms of the means chosen to implement the public purposes.  The court found the means to be narrowly tailored and directed at the only natural gas subject to rapid and economically injurious price increases.  *Energy Reserves* at 418.

The Minnesota case most directly on point for the third prong of the *Jacobsen* test is *Christensen v. Minneapolis Municipal Employment Retirement Board,* 331 N.W.2d 740 (Minn.1983), in which the issue was whether a "public employee's pension may be discontinued by an act of the legislature changing the eligibility requirements."  *Christensen* at 742.  Although *Christensen* was based on an estoppel theory, the court applied the third prong of the *Jacobsen* test and found the legislative goal of protecting integrity of the pension fund could be met by less drastic means than cutting off a retired employee's pension for 12 years until he reached age 60.

Here, also, the legislature could have repealed the tax exemption in a less abrupt manner.  It may have continued the exemption only for those contracts formed before the effective date of the statutory change or phased in the loss of the exemption on an increasing percentage basis over a period of years.  The repeal of the tax exemption, however, should not be seen as a solitary legislative measure.  Both historically and functionally, the repeal was part of a larger legislative package, the Omnibus Tax Bill of 1985.  The legislative purpose of this bill was a comprehensive adjustment of the benefits and burdens of the

tax laws in the light of current conditions. The delicacy of the overall balancing of benefits and burdens cannot depend on keeping any one tax exclusion sacrosanct.

All individual tax benefits or burdens are subject to complete or even drastic changes in order to effectuate the overall legislative purpose of a comprehensive adjustment on behalf of all taxpayers. Therefore, the particular adjustment of the rights and liabilities of the parties is reasonable and appropriate to the public purpose behind the Omnibus Tax Bill of 1985, of which the repeal of the tax exclusion was a small part.

Considering the three prongs of the *Jacobsen* test, the repeal of tax exclusion would not be an unconstitutional impairment of a contractual obligation, at least under the last two prongs of the analysis.

■ 2. *Estoppel.* The controlling case for an estoppel theory is *Christensen,* where the supreme court's analysis used section 90 of the Restatement (Second) of Contracts (1981), which went on to emphasize two threshold factors, and finally applied the *Energy Reserves* three-prong test to find promissory estoppel applicable.

a. The two threshold questions are (1) what has been promised by the state? and (2) to what degree and to what aspects of the promise has there been reasonable reliance by the promisee? *Christensen* at 749.

Nowhere on the written contract form is there a specific reference to the tax exclusion or language that the tax exclusion would not be repealed. Since the written contracts show no language promising not to repeal the tax exclusion, we must look to the particular statute.

The pertinent section 41.58, subd. 3 of Minn.Stat. (1978) provided as follows:

> The interest earned by the seller of the property on a seller-sponsored loan that is guaranteed by the commissioner shall be excludable from gross income for purposes of chapter 290 for the year in which it is received.

In construing the language of this statute, it is difficult to see how it could be interpreted as a promise to forever exclude the interest from gross income.

> A party asserting the creation of a contract [by statute] must overcome the well-established presumption that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise."

*Peterson v. Humphrey,* 381 N.W.2d 472, 475 (Minn.Ct.App.1986) (citations omitted), *pet. for rev. denied* (Minn. April 11, 1986). This same presumption should be applicable to an estoppel theory.

Appellants' argument on the promissory factor with its emphasis on inducement is, in effect, an argument on reliance. Appellants have not met their burden to overcome the presumption against finding a promise within the statute.

The second threshold factor, reliance, although briefly explained by appellants, contains no argument by them as to the reasonableness of that reliance. Nor does the stipulation of facts define the extent or any aspect of reasonable reliance. It merely states that appellants if called as witnesses

> would testify that they entered into their seller-sponsored loan agreements at least partially in reliance on the exclusion from taxation of interest earned on those loans as set out in Minn.Stat. § 41.58, subd. 3.

Tax laws at both the state and federal levels are continually being revised. Income tax exclusions change as the political winds change. Without more, reliance by appellants on the permanence of the income tax exclusion appears unreasonable.

We conclude that appellants have failed to demonstrate either a promise on the part of respondent or reasonable reliance on the part of appellants themselves.

b. Even if this court were to determine that respondent did promise a non-repealable income tax exclusion and appellants reasonably relied on that promise, we would proceed to apply the three-pronged *Energy Reserves/Jacobsen* test in the same manner and with the same result as that reached earlier in this opinion. The

doctrine of promissory estoppel is inapplicable in this matter.

## DECISION

There was no violation of the contracts clauses of the state and federal constitutions when the legislature repealed the tax exclusion from gross income for interest from seller-sponsored loans. Because there was no contractual obligation to maintain the tax exclusion, it was not necessary to reach the constitutional issues. Even if there had been a contractual obligation to maintain the tax exclusion, the obligation would have been void *ab initio* under the Minnesota Constitution article X, § 1, which prohibits contracting away the state's power to tax. Even if not void *ab initio*, there still would have been no unconstitutional impairment of a contractual obligation under the three-pronged *Jacobsen* test.

Since there was no evidence of either a promise or reasonable reliance, the trial court did not err in denying appellants' request for relief under promissory estoppel.

AFFIRMED.