MERIWETHER MINNESOTA LAND & TIMBER, LLC, a Delaware limited liability company, et al., Respondents,

v.

STATE of Minnesota, et al., Appellants.

No. A11–2162.

Court of Appeals of Minnesota.

July 2, 2012.

Sarah E. Crippen, Timothy A. Sullivan, Elizabeth C. Borer, Best & Flanagan LLP, Minneapolis, MN, for respondents.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Kevin Finnerty, Jason Pleggenkuhle, Assistant Attorneys General, St. Paul, MN, for appellants.

Considered and decided by WRIGHT, Presiding Judge; ROSS, Judge; and MUEHLBERG, Judge.

## OPINION

MUEHLBERG, Judge.*

Government-appellants challenge the district court's decision to grant summary judgment to landowner-respondents, arguing that summary judgment should have been granted in their favor. Appellants argue that the district court erred in finding quasi-contractual rights through promissory estoppel, in finding that these quasi-contractual rights were unconstitutionally impaired, in finding that the impairment of these rights was an unconstitutional taking, and in retaining the State of Minnesota as a party to this action. Respondents cross-appeal the district court's decision to award payments at a rate not stated in the statute. Appellants move to require correction of statements in respondents' appellate brief, and respondents move to strike appellants' reply memorandum pertaining to that motion. We reverse and remand on the merits and deny the motions.

## FACTS

The Sustainable Forest Incentive Act (SFIA) was enacted in 2001. 2001 Minn. Laws 1st Spec. Sess. ch. 5, art. 8, §§ 5–15;

Minn.Stat. §§ 290C.01–.13 (2010 & Supp. 2011). The SFIA allows owners of forest land to receive annual payments for qualifying land that they subject to certain requirements, such as implementing a forest management plan, following guidelines for harvesting timber, recording a covenant on the land for a minimum of eight years, and allowing public access to large enrolled tracts. Minn.Stat. §§ 290C.03(a), .04(a)(vii) (2010). A landowner can begin to withdraw from the program only after being enrolled for a minimum of four years; but the termination is not effective until the fifth calendar year after the landowner begins the withdrawal process. Minn.Stat. § 290C.10 (2010). Enrolled land is required to be in the program for a minimum of eight years; should a landowner withdraw early or fail to fulfill the eligibility requirements in any year, that landowner is required to repay the total amount of payments received from the program in the previous four years, plus interest. Minn.Stat. § 290C.11 (2010). In order to enroll, landowner-claimants file documentation indicating compliance with the eligibility requirements with the commissioner of revenue "by September 30 in order for the land to become eligible beginning in the next year." Minn.Stat. § 290C.04(a) (2010). By August 15 each year following the initial application, each claimant must certify that its land currently meets all the eligibility requirements, following which the commissioner makes incentive payments by October 1. Minn. Stat. §§ 290C.05, .08, subd. 1 (2010). Because claimants apply in one year to enroll their land the next year, payments are for compliance in the same year the payments are made.

Until 2010, the amount of SFIA payments were determined by multiplying the

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

number of acres enrolled by each claimant by three per-acre rates, with the highest result being used. Minn.Stat. § 290C.07 (2008). The three per-acre rates originally consisted of a statutory minimum of $1.50 per acre and two rates based on average property tax rates for certain types of land. Minn.Stat. § 290C.07 (2006). The property tax based rates, despite fluctuating annually, were higher than the minimum per-acre rates every year. In 2008, the minimum payment was changed to $7 per acre, but the property tax based rates remained above that amount. 2008 Minn. Laws ch. 154, art. 2, § 23; Minn.Stat. § 290C.07(b)(2) (2008). In 2009, one of the formulas was changed slightly (from "timberland" to "managed forest land") because of other changes in Minnesota tax law. See 2009 Minn. Laws ch. 88, art. 10, § 16. That change had an unexpectedly large effect and the 2010 payments would be calculated at $15.67 per acre, compared to $8.74 per acre the previous year.

In 2009, Governor Pawlenty unalloted funding for the SFIA program such that each claimant's payment was limited to or capped at $100,000. That cap was to be effective starting with 2010 payments. In 2010, this change was codified, but only applied to 2010 payments. See 2010 Minn. Laws 1st Spec. Sess. ch. 1, art. 13, § 4, subd. 3; Minn.Stat. § 290C.07, note (2010). This cap affected only six of the 1,700 total SFIA claimants.

In 2011,[1] the legislature made a number of changes to the SFIA. It amended the statute so that 2011 (fiscal year 2012) and later payments are made at a flat $7 per acre rate, subject to the $100,000 cap which was made permanent. 2011 Minn. Laws 1st Spec. Sess. ch. 7, art. 6, § 12; Minn.Stat. § 290C.07 (Supp.2011). The legislature also provided that a claimant whose 2010 or 2011 payments were limited in this manner could terminate participation in the SFIA without penalty if done by December 31, 2011. Id.

The respondents are each timber and paper companies, with land enrolled in the SFIA. They hold the three largest amounts of land enrolled in the SFIA program, with a collective total of more than 500,000 acres and about 60% of land enrolled in the program. Each respondent enrolled its land in the SFIA program and claimed payments. Their compliance with the eligibility, enrollment, and certification requirements of the SFIA is not in dispute.

Each timber-company respondent also voluntarily participates in private forest-management programs, either through the Sustainable Forest Initiative (SFI) or the Forest Stewardship Council (FSC). These programs also address sustainable forest management practices, although the requirements of these programs are not precisely aligned with those of the SFIA program. The private programs have more detailed requirements for certification and forest management and require on-site audits, are not legally enforceable, do not require a covenant be placed on the land, do not require that the public be allowed to use the enrolled land, and do not entail withdrawal penalties. Each of the timber companies publicizes its participation in these private programs on its websites, and participation in the programs is necessary to market their products as SFI and/or FSC certified.

The payments for 2010 were issued as expected on October 1, 2010, with each respondent receiving the capped amount of $100,000. Respondents filed suit on January 31, 2011, against various State of

---

1. The district court decision from which this appeal is taken only addressed the 2010 payments. Information regarding the 2011 amendments is presented here only in the interest of accuracy and completeness.

Minnesota officials and entities. Respondents asserted that the enactment of the limit on SFIA payments and the issuance of capped payments constituted a breach of contract or, alternatively, a breach of promise which the state was estopped from dishonoring, constituted an unconstitutional impairment of contract under both the Minnesota and United States Constitutions, and violated the Takings clauses and the Equal Protection clauses of the United States and Minnesota Constitutions. On February 11, 2011, appellants moved to dismiss the complaint, asserting that only the Commissioner of Revenue was a proper defendant and that respondents had failed to state a claim upon which relief could be granted. Respondents moved for partial summary judgment on April 11, 2011. The district court heard both motions on May 18, and took the matter under advisement.

On July 21, 2011, appellants notified the district court of changes to the statute in question. As discussed above, these changes include making the $100,000 cap permanent and adjusting the rate at which payments were calculated to $7 per acre. Minn.Stat. § 290C.07 (Supp.2011). Respondents moved the district court for leave to supplement the record with information on these changes, and later moved the court to supplement and amend the complaint to include the 2011 payments. On November 9, 2011, the district court granted respondents' motions.

On November 3, 2011, the district court dismissed Governor Dayton, the Minnesota Senate and Minnesota House of Representatives with prejudice, dismissed the Minnesota Management and Budget Commissioner without prejudice, denied appellants' motion to dismiss the complaint for failure to state a claim, denied appellants' motion to continue the proceedings for more discovery, and granted respondents' motion for partial summary judgment as to

2010 payments. The district court did not address 2011 and later payments. In granting respondents' motion for summary judgment, the district court ruled that the cap was an unconstitutional impairment of the quasi-contractual promise made in the SFIA, and that the limit was an unconstitutional taking without just compensation. The district court further determined that the $15.67 per acre rate at which payments for 2010 had been calculated would result in a windfall, and instead calculated the payment for 2010 at the rate of $10.38 per acre. Judgment on that order was entered on November 9, but on November 23, 2011, the district court stayed the judgment to the extent that it required the immediate payment of the amounts calculated under its order pending this appeal.

## ISSUES

I. Does the SFIA create a contract or a quasi-contractual right through promissory estoppel?

II. Does the amendment constitute an unconstitutional impairment of the contract or promise?

III. Does the amendment constitute an unconstitutional taking?

IV. Does the amendment violate the equal protection clauses?

V. Was summary judgment warranted?

VI. Is the State of Minnesota a proper party?

VII. Should respondents be required to correct statements in their brief?

## ANALYSIS

**I. Does the SFIA create a contract or a quasi-contractual right through promissory estoppel?**

**A. Does the SFIA create a contract?**

Respondents argued to the district court that the SFIA created a con-

tractual right in recipients of SFIA payments. A contractual obligation may be created by a state statute " 'when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State.' " *Peterson v. Humphrey,* 381 N.W.2d 472, 475 (Minn.App.1986) (quoting *U.S. Trust Co. v. New Jersey,* 431 U.S. 1, 17 n. 14, 97 S.Ct. 1505, 1515 n. 14, 52 L.Ed.2d 92 (1977)), *review denied* (Minn. Apr. 11, 1986). The statutory language "must overcome the well-established presumption that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.' " *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 466, 105 S.Ct. 1441, 1452, 84 L.Ed.2d 432 (1985)). There must be a "clear indication that the legislature intends to bind itself contractually." *Nat'l R.R. Passenger Corp.,* 470 U.S. at 465–66, 105 S.Ct. at 1451. Minnesota law codifies this common-law presumption that "[t]he state is not bound by the passage of a law unless named therein, or unless the words of the act are so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature." Minn.Stat. § 645.27 (2010).

■ The district court did not find a contractual right in the SFIA. Appellants further argue that "even a cursory review of the SFIA shows that it does not create a contract." Indeed, the language of the SFIA does not evince an intent to create a contract with parties that enroll their land in the program. Further, on appeal, respondents have neither supported the argument that there is a contract in the SFIA nor filed a notice of related appeal on the issue of whether a contract was created in the SFIA. *See State Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.,* 558 N.W.2d 480, 480 (Minn.1997) (declining to reach an inadequately briefed

issue); *City of Ramsey v. Holmberg,* 548 N.W.2d 302, 305 (Minn.App.1996) (declining to address an issue without a notice of review), *review denied* (Minn. Aug. 6, 1996). We conclude that respondents have waived the argument that the SFIA created a contract with claimants.

**B. Does the SFIA create a quasi-contractual right through promissory estoppel?**

■ The district court found that the SFIA created a quasi-contractual right in the respondents through the doctrine of promissory estoppel. Appellants argue that promissory estoppel cannot be applied against the state based solely on the language of a statute, and alternatively that promissory estoppel does not properly apply in this case. Whether promissory estoppel applies is a question of law, which we review de novo. *Greuling v. Wells Fargo Home Mortg., Inc.,* 690 N.W.2d 757, 761 (Minn.App.2005).

■ The Minnesota Supreme Court has entertained the argument that promissory estoppel can be applied against the state. "Promissory estoppel, like equitable estoppel, may be applied against the state to the extent that justice requires." *Christensen v. Minneapolis Mun. Emps. Ret. Bd.,* 331 N.W.2d 740, 749 (Minn.1983). However, appellants appear to be correct in stating that, other than *Christensen,* "no other appellate case in Minnesota or anywhere else in the nation has found a promissory estoppel right based on a statute." Many cases applying promissory estoppel against the state deal with action by a government agency, rather than statutes. *Javinsky v. Comm'r of Admin.,* 725 N.W.2d 393, 398–400 (Minn.App.2007) (finding no right against an agency); *Hous. & Redev. Auth. of Chisholm v. Norman,* 696 N.W.2d 329, 336–37 (Minn.2005) (same). Other cases involve statutes or agency actions while a

government agency is acting as an employer. *See Jacobson v. Bd. of Trs. of Teachers Ret. Ass'n,* 627 N.W.2d 106, 110–11 (Minn.App.2001) (briefly entertaining promissory estoppel claim in the employment context before deciding the claim was barred by statute of limitations), *review denied* (Minn. Aug. 15, 2001); *Minneapolis Teachers Ret. Fund Ass'n v. State,* 490 N.W.2d 124, 128–30 (Minn.App.1992) (applying promissory estoppel in that context, but finding no promise in the statute), *review denied* (Minn. Oct. 28, 1992).

Despite the paucity of cases finding a quasi-contractual right through promissory estoppel, this court has acknowledged in dicta that promissory estoppel could apply to a legislative act. *Anderson v. State,* 435 N.W.2d 74, 80 (Minn.App.1989) (finding neither a clear promise nor reasonable reliance in applying promissory estoppel to a legislative change to the taxability of interest on state-guaranteed loans, but deciding the case on the lack of contractual rights in the written agreements between the parties). It appears that this paucity of cases is not the result of Minnesota courts having concluded that promissory estoppel should not be applied to statutory language, but rather that it is an extraordinarily rare case in which the equitable remedy of promissory estoppel should preclude state action. *See Mesaba Aviation Div. v. Itasca Cnty.,* 258 N.W.2d 877, 880 (Minn.1977) ("We do not envision that estoppel will be freely applied against the government. But if justice demands, estoppel can be applied against the government even when it acted in a sovereign capacity if the equities advanced by the individual are sufficiently great." (citation omitted)). The Minnesota Supreme Court has indicated that estoppel may only be applied against the government when the plaintiffs, who bear "a heavy burden of proof," show that their interest in justice outweighs "the public interest frustrated by the estoppel." *Brown v. Minn. Dep't of Pub. Welfare,* 368 N.W.2d 906, 910 (Minn. 1985). In this context, we consider promissory estoppel here.

■■ To establish promissory estoppel, we must find that "(1) a clear and definite promise was made, (2) the promisor intended to induce reliance and the promisee in fact relied to his or her detriment, and (3) the promise must be enforced to prevent injustice." *Martens v. Minn. Mining & Mfg. Co.,* 616 N.W.2d 732, 746 (Minn. 2000). "In applying promissory estoppel, two factors must be kept in mind: (1) What has been promised by the state? and (2) to what degree and to what aspects of the promise has there been reasonable reliance on the part of the [party seeking to estop the state.]" *Christensen,* 331 N.W.2d at 749.

## 1. Does the SFIA contain a clear and definite promise?

■ The pertinent language in the SFIA reads: "[a]n incentive payment for each acre of enrolled land *will* be made annually to each claimant in the amount determined under section 290C.07. The incentive payment *shall* be paid on or before October 1 each year based on the certifications due August 15 of that year." Minn. Stat. § 290C.08 (emphasis added). Section 290C.07 as it read in 2010 stated that "[a]n approved claimant under the sustainable forest incentive program is eligible to receive an annual payment. The payment *shall* equal the greater of" the various formulas. (Emphasis added.)

The district court found "that there is sufficient language under the SFIA to imply a promise by the State to provide 2010 incentive payments based upon the statutory formula and well-established administrative practice." Respondents argue that the use of mandatory language creates an enforceable promise, and that the absence of language disclaiming a promissory obligation underscores the reasonableness of

reading "shall" and "will" to indicate a promise. Appellants argue that unless the legislature includes language indicating immutability, the legislature's inherent power to amend statutes overcomes any linguistic indication of a promise of future action in the SFIA.

First, any promise to be found in a statute is inherently limited by the legislature's power to amend a statute. This premise is illustrated by considering the *Anderson* case, which addressed in dicta a statute that stated that a certain type of interest "shall be excludable from gross income" for certain purposes. *Anderson*, 435 N.W.2d at 80 (interpreting Minn.Stat. § 41.58, subd. 3 (1978)). That statute contained mandatory language similar to that at issue here, but this court stated that "[i]n construing the language of this statute, it is difficult to see how it could be interpreted as a promise to forever exclude the interest from gross income." *Id.* Rather than being a promise to never change the language of the statute, the use of "shall" indicates that taking the action is not discretionary. This is because the legislature inherently reserves the power to amend statutes; the legislature uses "shall" to avoid giving discretion to officials, not to abdicate its future amendment authority. *See Christensen,* 331 N.W.2d at 749 ("A promise enforced by estoppel, like a contract, contains an implied condition that the terms are subject to modification under the state's police power.").

Second, the legislature has exercised that inherent power to amend the statute apart from the amendment complained of by respondents. In 2008, the minimum payment was changed, and in 2009, one of the formulas for the calculation of payments was changed for 2010 payments. 2008 Minn. Laws ch. 154, art. 2, § 23; 2009 Minn. Laws ch. 88, art. 10, § 16. Respondents, however, do not argue that these changes were impermissible. Rath-

er, respondents want the court to enforce the latter of these changes because it results in a much higher per acre rate than had previously been paid under the program. But if respondents accept that such beneficial changes can be made to the "promise" they seek to enforce, they also must acknowledge that the legislature can similarly amend the statute to their detriment. Otherwise, amendments to statutes would simply be a one-way ratchet.

Third, in order to find a clear and definite promise in the SFIA, we must be able to discern the promise's precise terms. If the SFIA includes a promise that a payment will be made in exchange for satisfying certain criteria, that promise has been fulfilled because payments have been made to each respondent. If respondents have been promised payments under section 290C.07, that promise includes the provision at issue here, which is part of the statutory calculation. Minn.Stat. § 290C.07, note (2010). Considering the fluctuating nature of the payments even when calculated according to respondents' interpretation, and considering the amendments to the payment calculation provisions, it is clear that a specific per acre amount has not been promised. If the SFIA promises that payments must be made in accordance with a statutory formula in section 290C.07 without regard to the cap, then the legislature could have simply amended the formulas in that statute to achieve the effect of which respondents now complain. But a distinction between an amendment to the statutory calculation and an amendment limiting the result of that calculation is formalistic and unwarranted. Thus, if the capped payments do not fulfill the promise that respondents argue the SFIA contains, we are unable to find any definitive terms of a promise.

Finally, there is a "well-established presumption that 'a law is not in-

tended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Anderson*, 435 N.W.2d at 80 (quoting *Peterson*, 381 N.W.2d at 475). Minnesota law further states that "[t]he state is not bound by the passage of a law unless named therein, or unless the words of the act are so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature." Minn.Stat. § 645.27. Indeed, the covenant documents signed by each respondent directly state that the "conditions of the SFIA and of this covenant are requirements of current law that could change in the future." While this disclaimer is not part of the statute, it nonetheless expresses the presumption of the law that statutes are inherently subject to amendment.

Because promissory estoppel can only be based on a clear and definite promise, because we have not been able to discern a promise in the SFIA, because any perceived promise in a statute is inherently subject to the legislature's power to amend a statute, and because there is a strong presumption that statutes do not create vested and contractual rights, we conclude that the district court erred by holding that the SFIA contains an enforceable promise.

### 2. Did the state intend to induce reliance and did respondents rely to their detriment?

 The second element of promissory estoppel is that "the promisor intended to induce reliance and the promisee in fact relied to his or her detriment." *Martens*, 616 N.W.2d at 746. The promise must be such that it "might reasonably induce the promisee's action or inaction."

*Faimon v. Winona State Univ.*, 540 N.W.2d 879, 882 (Minn.App.1995), *review denied* (Minn. Feb. 9, 1996). Where a party is aware that there is a possibility that the promised result may not occur, reliance may not be reasonable. *See Javinsky*, 725 N.W.2d at 399. Moreover, the degree of the promisee's reliance on the promise must be reasonable; we must ask "to what degree and to what aspects of the promise has there been reasonable reliance." *Christensen*, 331 N.W.2d at 749.

 If there was a promise of payments in exchange for compliance with the requirements of the SFIA, respondents' compliance with those requirements indicates induced reliance. But our inquiry also requires that the reliance, and the degree of the reliance, be reasonable, as well as that the reliance be detrimental.

Appellants argue that it is not reasonable to rely on the promise when it was clear that the legislature had the authority to amend the SFIA, when the SFIA had indeed been amended, when the covenant document indicated that the SFIA is subject to amendment, and when the promisees are all sophisticated actors. Respondents do not indicate why it was reasonable to rely on the promise they argue the SFIA contained, nor did the district court address the reasonableness of respondents' reliance.

Assuming that the promise is to make annual incentive payments in exchange for meeting certain sustainable forest management requirements, it is reasonable to rely on the promise of those payments in undertaking to meet the requirements. Here, despite questions about whether the 2010 payments related to performance in 2009 or 2010,[2] it is unquestionable that the

---

**2.** It is clear that payments made in 2010 are for complying with the SFIA requirements through the end of 2010. However, there is no action left to be taken by SFIA claimants once the annual certification has been completed, except for refraining from violating the SFIA requirements. Thus, even though the 2010 payments are for the whole year of 2010, which was not over at the time the

respondents satisfied all of the requirements of the program. The respondents did not do more in reliance on the payments than simply comply with the statutory requirements. As a result, their reliance, and the degree to which they relied, was reasonable.

 However, both parties focus significantly more attention on whether respondents' actions in reliance were detrimental. Appellants argue that meeting the requirements of the SFIA was not detrimental because the respondents undertake similar and more rigorous action apart from the SFIA and because the respondents did not forego taking any other action in reliance on the SFIA. Respondents argue that binding their land with a restrictive covenant is in itself detrimental, even if no action was foregone because of that covenant.

This court has previously required that there be some detriment in fact in order to show that a putative promisee's reliance has been detrimental. *See Javinsky*, 725 N.W.2d at 399 ("There is no evidence that appellant had turned down other jobs or that appellant had other jobs available to him while he remained available to perform the project."); *see also Christensen*, 331 N.W.2d at 750 n. 4 (requiring that the reliance be of a "definite and substantial character in relation to the remedy sought" (quotation omitted)). Appellants strongly argue that the respondents participate in sustainable forest management programs in addition to the SFIA and that these programs require many of the same things as the SFIA. The primary difference is that the SFIA requires that respondents place a restrictive covenant on their land, meaning that respondents cannot alter the use of their enrolled property without penalty. Despite that, respon-

payments were made, the respondents completed the actions required of them by the

dents have not shown that they have been prevented from taking any beneficial opportunities by the covenant or any of the other SFIA requirements. On balance, then, we conclude that while respondents limited the use of their property, they have not suffered any actual detriment, and the district court erred by concluding otherwise.

### 3. Does justice require enforcement of the promise?

 Finally, we consider whether justice requires enforcement of the promise respondents claim is in the SFIA. "Estoppel applies only to avoid injustice." *Christensen*, 331 N.W.2d at 749. Among other factors, we consider "the reasonableness of a promisee's reliance and a weighing of public policies in favor of both enforcing bargains and preventing unjust enrichment." *Faimon*, 540 N.W.2d at 883. In this case, there are significant considerations weighing against finding a quasi-contractual right through promissory estoppel.

First, finding a quasi-contractual right in this statute violates standing presumptions against the creation of obligations in statutes. *See* Minn.Stat. § 645.27; *Anderson*, 435 N.W.2d at 80. Finding quasi-contractual rights in statutes would bind the power of the legislature to amend statutes, a result that goes against the interests of the people of Minnesota. If the state is bound by the use of mandatory language in any statute, then the legislature's ability to amend statutes would be severely constrained. Because of the potential for finding such obligations in any statute with mandatory language, we are reluctant to find contractual obligations in a statute that does not clearly contain such an obligation.

SFIA in order to receive payment.

Second, this case does not involve the deprivation of the means to live, or even directly cost respondents. The negative effect on respondents is thus limited; while the amount of money collectively at stake for respondents is large, it will not dictate whether respondents continue to exist. Further, apart from the monetary effect, as discussed above, there is no evidence that respondents actually suffered any detriment or missed any opportunities because of their participation in the SFIA. Rather, there is evidence that respondents would have engaged in the same forest management practices due to their participation in private forest management programs, and that practicing sustainable forest management is part of respondents' usual business practices. The interest of justice in paying respondents for engaging in practices that they would adopt regardless of the payments is small.

Finally, we consider the public interests in play. Counterbalancing respondents' financial interest is the interest of the people of Minnesota in protecting the public fisc. *See Lienhard v. State,* 431 N.W.2d 861, 867 (Minn.1988) ("[P]rotection of a governmental entity's financial stability is a legitimate public purpose."). In enacting a cap on SFIA payments, the legislature has attempted to balance the financial interests of the respondents and the state with the public interest in encouraging sustainable forest management. While respondents may not believe that the legislature has struck the appropriate balance, there is a strong interest in respecting the legislature's power to determine how to address competing interests.

For all of these reasons, we conclude that the SFIA does not create a quasi-contractual right through promissory estoppel in the respondents.

## II. Does the amendment constitute an unconstitutional impairment of the contract or promise?

■ Because we do not find such a quasi-contractual right in the SFIA, we decline to fully address whether the limit on SFIA payments constitutes an unconstitutional impairment of a contract under the Minnesota and United States constitutions. Rather, we note that the specific provision at issue "should not be evaluated in isolation but as part of a comprehensive legislative package to deal with that delicate task of adjusting benefits and burdens ... in the light of current conditions." *Anderson,* 435 N.W.2d at 79. The limitation on SFIA payments was part of an act "balancing proposed general fund spending and anticipated general fund revenue; modifying certain payment schedules to improve cash flow; ... [and] modifying calculation of state tax aids and credits." 2010 Minn. Laws 1st Spec. Sess. ch. 1, introduction; *cf. Christensen,* 331 N.W.2d at 751 (rejecting the claim that budget constraints supported eliminating pension benefits in the context of an act that was solely focused on reforming pension and retirement statutes rather than an emergency budget balancing bill). In other contexts, Minnesota courts have recognized "that the protection of a governmental entity's financial stability is a legitimate public purpose." *Lienhard,* 431 N.W.2d at 867. As a result, even if the SFIA contained a quasi-contractual right through promissory estoppel, we conclude that the legitimate purpose of maintaining fiscal stability behind the act does not make the payment limit an unconstitutional impairment of a contractual right.

## III. Does the amendment constitute an unconstitutional taking?

■ The district court held that the reduction in the amount of the 2010 pay-

ments and the requirement of public access each constituted takings.

■■■ The United States and Minnesota constitutions prohibit the taking of private property for public use without just compensation. U.S. Const. amend. V; Minn. Const. art. I, § 13. The takings clause of the Minnesota Constitution "is broader than the language of the federal constitution." *State by Humphrey v. Strom,* 493 N.W.2d 554, 558 (Minn.1992); *see also Johnson v. City of Minneapolis,* 667 N.W.2d 109, 115 (Minn.2003). Nonetheless, Minnesota courts generally have found federal interpretation instructive for the Minnesota clause. *Wensmann Realty, Inc. v. City of Eagan,* 734 N.W.2d 623, 631–32 (Minn.2007).

■■■ A regulatory taking occurs when the government "goes too far in its regulation, so as to unfairly diminish the value of the individual's property, thus causing the individual to bear the burden rightly borne by the public." *Westling v. County of Mille Lacs,* 581 N.W.2d 815, 823 (Minn.1998) (quotation omitted). Determining whether a government regulation is a compensable regulatory taking is an ad hoc and fact-specific inquiry that "calls as much for the exercise of judgment as for the application of logic." *Wensmann Realty,* 734 N.W.2d at 632 (quotation omitted). Whether a governmental action has resulted in a regulatory taking is a question of law for this court. *Id.* at 631.

■■■ Analysis of regulatory taking claims generally considers (1) "[t]he economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." *Penn Cent. Transp. Co. v. New*

*York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978); *see also Wensmann Realty,* 734 N.W.2d at 633 (considering the *Penn Central* factors);[3] *Johnson,* 667 N.W.2d at 114–15 (same); *Westling,* 581 N.W.2d at 823 (same). "[T]he *Penn Central* inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." *Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 540, 125 S.Ct. 2074, 2082, 161 L.Ed.2d 876 (2005).

■■■ Appellants argue that respondents had no property interest in uncapped payments and that the payment limit does not constitute a taking. Despite the district court having found that respondents had a property interest in the payments, respondents did not argue that the enforcement of the $100,000 cap is a taking. An argument not briefed is waived. *State Dep't of Labor & Industry v. Wintz Parcel Drivers, Inc.,* 558 N.W.2d 480, 480 (Minn.1997). Further, for reasons similar to those discussed regarding the existence of a quasi-contractual right through promissory estoppel, the right to an uncapped payment is not clearly defined enough in order to be a constitutionally protected property interest. While the district court held that respondents had a property interest in uncapped SFIA payments, the calculation of payments always occurs with reference to section 290C.07. Section 290C.07 has been amended in the past, including to introduce the $100,000 limit. Thus, to the extent that respondents have a property interest in SFIA payments, that interest has been satisfied by the capped payment; the SFIA does not create a property interest in uncapped payments.

---

**3.** The parties do not argue, and we do not address, the alternative analysis of *DeCook v. Rochester Intern. Airport Joint Zoning Bd.,* 796 N.W.2d 299 (Minn.2011) and *McShane v. City of Faribault,* 292 N.W.2d 253 (Minn.1980).

Respondents argue that the SFIA restrictions, in particular the requirement that their property be available for public use, constituted an unconstitutional taking. Appellants correctly argue that respondents' voluntary assumption of the property restrictions precludes finding a taking in the SFIA property restrictions.[4] Restrictions stemming from voluntary participation in a government program cannot constitute a taking. *Minn. Ass'n of Health Care Facilities v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 446 (8th Cir. 1984). Further, in light of respondents' participation in private sustainable forest management programs, we cannot find that the requirements of the SFIA interfered with any investment-backed expectations. While respondents may have lost some sense of nimbleness to their land, the respondents, being timber companies, ostensibly did not purchase the land in order to develop it into non-timber-producing land. As such, the economic impact of these requirements on respondents appears to be minimal. We conclude that the SFIA neither creates a property interest nor takes a property interest through the enforcement of the payment cap.

## IV. Does the amendment violate the equal protection clauses?

The district court did not address whether the $100,000 SFIA payment limit violated the Equal Protection clauses of the Minnesota and United States constitutions. Appellants argue that equal protection does not preclude the cap on SFIA payments because the cap is applied to all claimants.[5]

For purposes of an equal protection challenge, the SFIA payment limit is an economic classification, which is reviewed under the rational basis test. *Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992). " 'When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern.' " *John Hancock Mut. Life Ins. Co. v. Comm'r of Revenue*, 497 N.W.2d 250, 253 (Minn.1993) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 271–72, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979)). When "no fundamental right or suspect class is involved, the statute is presumed constitutional, and the burden is on . . . the challengers to prove constitutional violation beyond a reasonable doubt." *Id.*

"Equal protection requires that persons similarly situated be treated similarly." *Lidberg v. Steffen*, 514 N.W.2d 779, 784 (Minn.1994); *see also In re Harhut*, 385 N.W.2d 305, 310 (Minn.1986) ("The equal protection clauses of the federal and state constitutions require that all persons similarly situated be treated alike under the law."). "[T]he 'Equal Protection

4. We note initially that respondents' complaint did not challenge the validity of the regulations themselves, but rather the application of the $100,000 SFIA payment limit. Thus, it is unclear that this issue is before this court or that respondents would be entitled to any relief even if we were to find that the regulations constitute a taking.

5. This court generally does not address issues that are not decided by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn.1988). However, where an issue is fully briefed and presented to both the district court and this court, and where there are no factual determinations to be made, this court may exercise discretion to address the issue in the interests of judicial economy. *Putz v. Putz*, 645 N.W.2d 343, 350 (Minn.2002) (noting that the *Thiele* rule is not "ironclad"); *Franklin v. Western Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 407 n. 2 (Minn.1998) (addressing an undecided issue "in order to forestall additional litigation"); *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 688 (Minn. 1997) (noting factors that favor review of an issue not decided by the district court).

Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike.' " *In re Welfare of M.L.M.*, 813 N.W.2d 26, 37 (Minn.2012) (quoting *Nordlinger*, 505 U.S. at 10, 112 S.Ct. at 2326). "Similarly situated groups must be alike in all relevant respects." *St. Cloud Police Relief Ass'n v. City of St. Cloud*, 555 N.W.2d 318, 320 (Minn.App.1996), *review denied* (Minn. Jan. 7, 1997) (quotation omitted). This court reviews an equal protection claim de novo. *Thul v. State*, 657 N.W.2d 611, 616 (Minn.App.2003), *review denied* (Minn. May 28, 2003).

The purpose of the $100,000 SFIA payment limit is the preservation of the public fisc. As noted above, "the protection of a governmental entity's financial stability is a legitimate public purpose." *Lienhard*, 431 N.W.2d at 867. This payment limit applies to all 1,700 SFIA claimants, not just to respondents. Respondents are three of the six claimants who received lower payments than they otherwise would have as a result of the cap. Respondents' concern, then, is with the effect and not the classification. If other claimants had enough land enrolled to receive more than $100,000 in payment, those claimants' payments would be limited just as the payments to the respondents have been. Because this is a question of effect, there is no constitutional concern here. *See John Hancock Mut. Life Ins. Co.*, 497 N.W.2d at 253. As a result, the equal protection clauses of the Minnesota and United States constitutions do not provide a basis for relief for the respondents.[6]

## V. Was summary judgment warranted?

Summary judgment is proper if "there is no genuine issue as to any material fact" and "either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A motion for dismissal for failure to state a claim under rule 12 is treated as a motion for summary judgment under rule 56 when the court considers information outside of the pleadings. Minn. R. Civ. P. 12.02. As a result, the court was empowered to treat appellants' motion to dismiss as the functional equivalent of a rule 56 motion for summary judgment.

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citing Minn. R. Civ. P. 56.03). On appeal from summary judgment, we review the record to determine whether there is any genuine issue of material fact and whether, in granting summary judgment, the district court committed an error of law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). We "view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761.

The district court found that there are no issues of material fact and granted summary judgment for respondents. We agree with the district court that there are no genuine issues of material fact that precluded the entry of summary judgment. The issues in this case are entirely legal

---

**6.** Respondents' cross-appeal of the rate at which the district court ordered payment be made is phrased as an equal protection challenge. Therefore, we note here that because we do not find a basis for precluding enforcement of the $100,000 SFIA payment cap, we decline to address whether equal protection requires that payment be made at the $15.67 per acre rate at which other SFIA claimants were paid, rather than the $10.38 ordered by the district court.

questions. However, we conclude, pursuant to the analysis herein, that the district court erred as a matter of law in granting summary judgment for the respondents rather than for appellants.

## VI. Is the State of Minnesota a proper party?

Appellants argue that the "State of Minnesota" as an entity is not a proper party to this suit, whereas respondents argue that the state is an indispensable party because they challenged the state's legislative amendment. The district court declined to dismiss the state as a party because the appellants "invok[ed] the State's responsibility for the financial well-being of all its citizens."

Because we conclude that the respondents' claims are without merit, we decline to address whether the state is a proper party to this action. Rather, we note that the state can provide no relief other than that provided by the commissioner of revenue. As a purely procedural matter, if the state can provide no relief, and respondents do not indicate that it can, it is questionable whether the joinder of the state as a party is proper under Minn. R. Civ. P. 20.01 (allowing joinder of parties "as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief" arising out of common facts).

## VII. Should respondents be required to correct statements in their brief?

Subsequent to the filing of this appeal, appellants filed a motion with this court requesting that respondents be required to correct what appellants termed "misleading representations" in respondents' briefs. Respondents claim that no such misleading representations were made. Respondents also filed a motion to strike appellants' reply memorandum on this motion on the grounds that it contained arguments not asserted in appellants' motion, thereby im-

properly denying respondents an opportunity to respond.

We have not found, and appellants have not cited, any authority upon which this court could require a party to alter its brief. As a result, we deny appellants' motion as unauthorized and deny respondents' motion to strike as moot. *See Drewitz v. Motorwerks,* 728 N.W.2d 231, 233 n. 2 (Minn.2007).

## DECISION

The district court erred by granting summary judgment in favor of respondents. The SFIA does not create contractual rights; quasi-contractual rights through promissory estoppel; or a property interest under the takings clauses. Further, the enforcement of the $100,000 SFIA payment limit does not violate the equal protection clauses of the Minnesota and United States constitutions. Because respondents cannot succeed on the claims presented on appeal as a matter of law, summary judgment should be entered for appellants.

**Reversed and remanded; motions denied.**